1    Marc J. Schneider, State Bar No. 214609
     mschneider@stradlinglaw.com
2    Andrew B. Mason, State Bar No. 317944
     amason@stradlinglaw.com
3    STRADLING YOCCA CARLSON & RAUTH
     A Professional Corporation
4    660 Newport Center Drive, Suite 1600
     Newport Beach, California  92660
5    Telephone:  (949) 725-4000
     Facsimile:  (949) 725-4100

6

7    Attorneys for Defendants
     OCTANe FOUNDATION FOR INNOVATION,
     AND WILLIAM A. CARPOU

8

9         **UNITED STATES DISTRICT COURT**

10     **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

| | |
|---|---|
| 11   Gabrielle Rios, an individual; and Truinject Corp., a Delaware corporation, | CASE NO.  8:21-cv-00063-JVS-KES |
| 12 | Honorable James V. Selna |
| 13          Plaintiffs, | Courtroom 10C |
| 14            vs. | **DEFENDANTS OCTANE FOUNDATION FOR INNOVATION AND WILLIAM A. CARPOU'S** |
| 15   James J. Peterson, an individual; William A. Carpou, an individual; | **NOTICE OF MOTION AND MOTION TO STAY ALL CLAIMS** |
| 16   Kimberly L. Kovacs, an individual; and Octane Foundation for Innovation, | **OR, IN THE ALTERNATIVE, TO DISMISS** |
| 17   a Delaware corporation,, | |
| 18         Defendants. | **[DECLARATION OF ANDREW MASON AND REQUEST FOR JUDICIAL NOTICE** |
| 19 | **FILED CONCURRENTLY HEREWITH]** |
| 20 | Hearing Date: September 13, 2021 |
| 21 | Time: 1:30 pm |
| 22 | Courtroom: 10C |
| 23 | Complaint filed January 12, 2021 |
| 24 | FAC filed April 15, 2021 |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on September 13, 2021, at 1:30 p.m., or as soon thereafter as the matter may be heard in Department 10C of the above-referenced court, which is located at 411 W. Fourth Street, 9th Floor, Courtroom 10C, Santa Ana, CA 92701, Defendants Octane Foundation for Innovation and William Carpou (collectively "the Octane Defendants") will and hereby do move this Court for an order staying this action until the conclusion of related state court proceedings or, in the alternative, dismissing with prejudice each of Plaintiffs' counts against the Octane Defendants for failure to state a claim upon which relief can be granted.

The Octane Defendants bring this Motion pursuant to *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) and the Federal Rules of Civil Procedure 12(b)(6).  The Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities below; the Declaration of Andrew Mason, the Request for Judicial Notice of the Complaint filed in the Superior Court of California County of Orange Case No. 30-2019-01065013-CU-BC-CJC; the Octane Defendants' Reply Brief and any other papers submitted in support of this Motion; the Proposed Order submitted in support of this Motion, and such other and further papers, evidence, and argument as may be submitted in connection with this Motion.

//

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-2-

NOTICE OF MOTION AND MOTION TO STAY ALL CLAIMS OR, IN THE ALTERNATIVE, TO DISMISS

4838-2286-4619v19/106556-0001

8:21-cv-00063

1    This Motion is made following the conference of counsel pursuant to L.R. 7-

2 3, which conference took place telephonically on June 4, 2021 at approximately

3 10:00 a.m.

4 DATED:  June 28, 2021          STRADLING YOCCA CARLSON RAUTH
                                 A Professional Corporation
5
                                 By:   /s/ Andrew B. Mason
6                                      Marc J. Schneider
                                       Andrew B. Mason
7                                      Attorneys For Defendant
                                       OCTANe FOUNDATION FOR
8                                      INNOVATION AND
                                       WILLIAM A. CARPOU
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-3-

NOTICE OF MOTION AND MOTION TO STAY ALL CLAIMS OR, IN THE ALTERNATIVE, TO DISMISS
4838-2286-4619v19/106556-0001                                    8:21-cv-00063

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................... 9

II.     FACTUAL AND PROCEDURAL BACKGROUND ................................ 10

    A.      Factual Background ....................................................................... 10

        1.      Octane Is A Non-Profit That Builds The Orange County
            Technology Community. ....................................................... 10

        2.      Octane Introduced Truinject To Investors in 2016, But
            Octane Is Not Alleged To Have Shared Any Confidential
            Information At That Time. ..................................................... 11

    B.      PROCEDURAL HISTORY .............................................................. 12

        1.      Plaintiffs Allege Carpou Shared A January 12, 2017
            Email With Peterson's Attorney When Peterson Sued
            Plaintiffs For Fraud In The State Court Litigation. ................. 12

        2.      With Trial In The State Court Litigation Rapidly
            Approaching, Plaintiffs File This Retaliatory Action. ............. 13

III.    ARGUMENT ........................................................................................... 14

    A.      This Case Should Be Stayed Under The *Colorado River*
        Doctrine In Favor Of The State Court Litigation. ............................ 14

        1.      This Case Is "Substantially Similar" Because It Is A
            Mere "Spin-Off" Of The State Court Litigation. .................... 15

        2.      The Facts Here Weigh Heavily In Favor Of Staying This
            Case Until the State Court Proceedings Have Concluded ........ 17

            i.      The Fourth And Seventh *Colorado River* Factors
                Favor A Stay To Discourage Forum Shopping .............. 17

            ii.     The Third, Fifth, Sixth And Eighth *Colorado River*
                Factors Also Favor A Stay Because Substantial
                Overlap Exists Between This Case And The
                Earlier Filed State Court Litigation. ............................. 19

    B.      Alternatively, The Octane Defendants Request Dismissal
        Because Plaintiffs Fail To State A Claim Against Them. .................. 22

        1.      Plaintiffs Are Required To Plead In A Non-Conclusory
            Fashion Under *Twombly* & *Iqbal*. ...................................... 22

        2.      Plaintiffs' Allegations Regarding Carpou's
            Conversations With Allergan Cannot State A Claim
            Because Carpou Is Not Alleged To Have Shared Any
            Confidential Information With Allergan. ............................... 23

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-4-

TABLE OF CONTENTS

4838-2286-4619v19/106556-0001

8:21-cv-00063

3.    Plaintiffs' Allegations That Carpou Disclosed Allergan's Purported Offer To Acquire Truinject To Peterson Cannot State A Claim. ....................................................25

   i.    The Purported Allergan Offer Could Not Have Been Truinject's Confidential Information Because Truinject Admits There Was No Such Offer And The Purported Offer Was Disclosed Independently By Peterson..........................................................................25

   ii.   Plaintiffs Cannot Allege Damages Related To The Disclosure Of The Purported Allergan Offer.................26

   iii.  Plaintiffs Tort Claims For Breach of Confidential Relationship Are Barred By the Litigation Privilege....................................................................................27

4.    Several Claims Fail For Additional Reasons. .........................28

   i.    Carpou Is Not A Party To The NDA. ...............................28

   ii.   Plaintiffs' Covenant Of Good Faith And Fair Dealing Claims Are Impermissibly Duplicative Of Their Contract Claims. ......................................................29

IV.   CONCLUSION ..................................................................................................30

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

TABLE OF CONTENTS

4838-2286-4619v19/106556-0001

8:21-cv-00063

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acrisure of Cal., LLC v. SoCal Commer. Ins. Servs.*,
U.S. Dist. LEXIS 170027 (C.D. Cal. Mar. 27, 2019) .......................................23

*Alta Devices, Inc. v. LG Elecs., Inc.*,
343 F. Supp. 3d 868 (N.D. Cal. 2018) ...............................................................24

*Amin v. Advanced Sterilization Prods. Servs.*,
2019 U.S. Dist. LEXIS 13254 (C.D. Cal. Jan. 7, 2019)........................ 17, 18, 21

*Architectural Res. Grp., Inc. v. Hks, Inc.*,
2013 U.S. Dist. LEXIS 20247 (N.D. Cal. Feb. 13, 2013)...............................26

*Aryana v. Roossien*,
312 F. App'x 853 (9th Cir. 2009) ......................................................................28

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................22

*Buckley v. Cracchiolo*,
2014 U.S. Dist. LEXIS 17517 (C.D. Cal. Feb. 7, 2014)...................................28

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) ...................................................................................*passim*

*Davies v. Krasna*,
14 Cal. 3d 502 (1975)........................................................................................24

*People ex rel. Gallegos v. Pac. Lumber Co.*,
158 Cal. App. 4th 950 (2008).............................................................................27

*Global Hawk Ins. Co. RRG v. Wesco Ins. Co.*,
424 F. Supp. 3d 848 (C.D. Cal. 2019)..........................................................24, 26

*Grayson Serv. v. Crimson Res. Mgmt. Corp.*,
2015 U.S. Dist. LEXIS 146445 (E.D. Cal. Oct. 28, 2015) ...............................28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

4838-2286-4619v19/106556-0001

8:21-cv-00063

*Hartman v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*,
   536 F.3d 1049 (9th Cir. 2008) ........................................................29

*Health Care & Ret. Corp. of Am. v. Heartland Home Care, Inc.*,
   324 F. Supp. 2d 1202 (D. Kan. 2004) ...........................................12

*Jacob B. v. County of Shasta*,
   40 Cal. 4th 948 (2007).....................................................................27

*Kearney v. Foley & Lardner, LLP*,
   590 F.3d 638 (9th Cir. 2009) ..........................................................27

*Longest v. Green Tree Servicing LLC*,
   74 F. Supp. 3d 1289 (C.D. Cal. 2015)............................................29

*Luxul Tech. Inc. v. NectarLux, LLC*,
   2016 U.S. Dist. LEXIS 78899 (N.D. Cal. June 16, 2016) ...............26

*Montanore Minerals Corp. v. Bakie*,
   867 F.3d 1160 (9th Cir. 2017)........................................................15

*Nakash v. Marciano*,
   882 F.2d 1411 (9th Cir. 1989) ..................................................18, 19

*New Box Sols. LLC, v. Davis*,
   2018 U.S. Dist. LEXIS 164510 (C.D. Cal. Sep. 18, 2019).........23, 26

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
   2018 U.S. Dist. LEXIS 82853 (N.D. Cal. May 4, 2018) .................23

*Smith v. Simmons*,
   2007 U.S. Dist. LEXIS 70833 (E.D. Cal. Sept. 24, 2007) ...............29

*Tele-Count Eng'rs, Inc. v. Pac. Tel. & Tel. Co.*,
   168 Cal. App. 3d 455 (1985)......................................................24, 26

*Trinity Hotel Investors, LLC v. Sunstone OP Props., LLC*,
   2009 U.S. Dist. LEXIS 13692 (C.D. Cal. Feb. 5, 2009)...................30

*United States v. State Water Res. Control Bd.*,
   988 F.3d 1194 (9th Cir. 2021)........................................................18

*Vendavo, Inc. v. Price*
   *f(x) AG*, 2018 U.S. Dist. LEXIS 48637, at *9 (N.D. Cal. Mar. 23,
   2018)................................................................................................23

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

4838-2286-4619v19/106556-0001

8:21-cv-00063

*Wilder v. CBS Corp.*,
  2013 U.S. Dist. LEXIS 190059 (C.D. Cal. Feb. 13, 2013) ................................ 30

*Wise v. Thrifty Payless, Inc.*,
  83 Cal. App. 4th 1296 (2000) ............................................................................ 28

*Xpo GF Am., Inc. v. Qiuheng Liao*,
  2019 U.S. Dist. LEXIS 229172 (C.D. Cal. Sep. 27, 2019) ........................ *passim*

**Statutes**

18 U.S.C. § 1836(d) .............................................................................................. 24

**Other Authorities**

Fed. R. Civ. P. Rule 12(b)(6) ...................................................................... 12, 22

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

TABLE OF AUTHORITIES

4838-2286-4619v19/106556-0001

8:21-cv-00063

## I.     INTRODUCTION

No good deed goes unpunished.  Defendant Octane Foundation for Innovation ("Octane") is an Orange County-based non-profit whose mission is to incubate technology companies by bringing together people and capital.  Octane has supported hundreds of startups, creating thousands of high-paying, local jobs and contributing to Orange County's position as a world class technology hub. Octane helped a local startup Truinject Corporation ("Truinject") and its CEO Gabrielle Rios (collectively "Plaintiffs"), and now has been sued for its trouble.

Octane and its CEO William Carpou (collectively the "Octane Defendants") first became acquainted with Truinject in 2015.  Truinject — in need of seed capital and other resources — encouraged Octane to introduce it to Defendant James Peterson, the CEO of Microsemi (one of Orange County's largest public companies).  Peterson invested $850,000 in Truinject in late 2016 and early 2017.

In April 2019, Peterson sued Truinject in Orange County Superior Court, claiming that he had been fraudulently induced to make his investment by Truinject's false statement that Allergan Inc. — Rios' former employer — had offered to acquire Truinject for $150 million (the "State Court Litigation").  As the trial date fast approached in the State Court Litigation, Plaintiffs opened up a new front with this retaliatory suit against Peterson that drags the Octane Defendants to the courthouse for no apparent reason other than to pressure Peterson.  Federal courts regularly stay such parallel actions.

Alternatively, the Octane Defendants request that the Court dismiss the claims against them.  The First Amended Complaint (the "FAC") in this case is 59 pages in length, but the Octane Defendants are basically bystanders.  Plaintiffs only allege two purported wrongful acts against the Octane Defendants, neither of which can possibly support a claim.

First, Plaintiffs allege that Carpou had a conversation with Allergan representatives in 2017 in which Allergan told Carpou how Allergan valued

MEMORANDUM OF POINTS AND AUTHORITIES

4838-2286-4619v19/106556-0001

Truinject.  Plaintiffs allege claims for trade secret misappropriation, breach of a non-disclosure agreement, and breach of confidentiality, but those claims all require that Carpou shared Truinject's confidential information.  Since the FAC does not allege any statements by Carpou, and instead only statements by Allergan, these claims against the Octane Defendants fail.

Second, Plaintiffs allege that, in March 2019 in the State Court Litigation, Carpou shared an email with Peterson's counsel that Rios had sent to Carpou in 2017 in which Rios stated the purportedly confidential information that Allergan had offered to purchase Truinject for $150 million (the very same false statement that Peterson alleges was made to him by Truinject).  Of course, Peterson already was aware of this purportedly confidential information and in fact made this information public in the State Court Litigation, so the Non-Disclosure Agreement does not apply according to its terms.  Moreover, Truinject denies that Allergan ever made such an offer so this non-existent offer cannot even constitute Truinject's confidential information.  The litigation privilege also bars Plaintiffs' tort claims because this email was disclosed as part of the State Court Litigation.

The Octane Defendants respectfully request that this Court stay this action until the conclusion of the State Court Litigation or, alternatively, dismiss the claims against them to bring an end to this retaliatory and baseless lawsuit.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

#### 1.  Octane Is A Non-Profit That Builds The Orange County Technology Community.

Octane is an Orange County-based non-profit corporation that supports the growth of local technology businesses by connecting these often nascent businesses with investors, advisors and talent.  (FAC ¶¶ 5, 34.)  Carpou is an experienced executive whose technology career has spanned over 40 years.  (FAC

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-10-

MEMORANDUM OF POINTS AND AUTHORITIES

4838-2286-4619v19/106556-0001

8:21-cv-00063

1  ¶ 33.)  Carpou has served as the CEO of Octane since 2015, overseeing the non-

2  profit's substantial growth during this period.  (*Id.* ¶ 35.)

3          **2.      Octane Introduced Truinject To Investors in 2016, But**

4                 **Octane Is Not Alleged To Have Shared Any Confidential**

5                 **Information At That Time.**

6          Consistent with Octane's mission — and as it has done for hundreds of other

7  companies — Octane offered to connect Rios and Truinject to individuals that

8  could help this early stage company grow.  (FAC ¶ 9.)  Octane signed an NDA

9  with Truinject, with Carpou signing in his capacity as CEO of Octane.  (FAC, Ex.

10 4.)  The NDA specifically states:  "[T]he Recipient's obligations in Section 2 [to

11 maintain confidential information] will not apply to the extent any Confidential

12 Information: (i) is now or hereafter becomes generally known or available to the

13 public, through no act or omission on the part of Recipient . . . ."  (*Id.*)

14         Truinject alleges that Carpou introduced Rios to Peterson, who subsequently

15 invested $850,000 in Truinject through two convertible promissory notes dated

16 November 26, 2016 and February 13, 2017.  (FAC ¶¶ 58, 81.)  Plaintiffs allege that

17 Rios and Carpou exchanged emails on January 12, 2017 in which they discuss that

18 "$150m is a good first offer" from Allergan.  (FAC ¶ 112.)  Plaintiffs do <u>not</u> allege

19 that Carpou disclosed this email to Peterson or anyone else in 2017.

20         In July 2017, Carpou allegedly had a conversation with William Meury,

21 Chief Commercial Officer of Allergan, regarding Truinject.  (FAC ¶ 88.)  The

22 FAC alleges that Allergan shared with Carpou the valuation that Allergan placed

23 upon Truinject:  "I was completely surprised as to how a conversation with Meury

24 went as far as him placing a value on Truinject and sharing this with you."  (FAC ¶

25 89.)  The FAC does not allege that Carpou said anything during this conversation.

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
L A W Y E R S
NEWPORT BEACH

MEMORANDUM OF POINTS AND AUTHORITIES

4838-2286-4619v19/106556-0001

8:21-cv-00063

### B.   PROCEDURAL HISTORY

#### 1.   Plaintiffs Allege Carpou Shared A January 12, 2017 Email With Peterson's Attorney When Peterson Sued Plaintiffs For Fraud In The State Court Litigation.

Plaintiffs allege that the relationship between Peterson and Truinject took a turn for the worse in 2018, culminating in Peterson filing the State Court Litigation against Truinject on April 19, 2019.  (*See* FAC ¶¶ 112-123, 133-135; s*ee also* Mason Decl., Ex. 1 [Peterson's Complaint in Case No. 30-2019-01065013-CU-BC-CJC].) [1]  The pleadings in that case allege that "Rios fraudulently induced Peterson and others to purchase convertible promissory notes by stating that Allergan—her former employer—had made a standing offer to acquire Truinject for at least $150,000,000."  (*Id.* ¶ 10.)

Plaintiffs allege that Carpou shared a January 12, 2017 e-mail with Peterson's attorney Jeff Reeves in March 2019 shortly before Peterson filed the State Court Litigation.  (FAC ¶¶ 208, 225.)  Plaintiffs allege that this e-mail contained the confidential information that Allergan had offered to acquire Truinject for $150 million.  (FAC ¶¶ 205, 222.)  Of course, Peterson made that information public when he filed the State Court Litigation alleging that Rios had made that statement to him.  (*See* Mason Decl., Ex. 1 [State Court Litigation Complaint, filed April 19, 2019].)  Plaintiffs actually deny that Allergan even made any such offer, so this information could not be Truinject's confidential information.  (FAC ¶¶ 111, 204, 221, 293 ("Truinject never received an offer from Allergan").)

---

[1] The Declaration of Andrew Mason submitted concurrently herewith supports the Motion to Stay under the *Colorado River* doctrine as this is an evidentiary motion. *Health Care & Ret. Corp. of Am. v. Heartland Home Care, Inc.*, 324 F. Supp. 2d 1202, 1203 (D. Kan. 2004).  The Motion to Dismiss pursuant to Rule 12(b)(6) only relies upon the FAC's allegations and Peterson's State Court Litigation Complaint, which is subject to the Octane Defendants' Request for Judicial Notice.

1

2. **With Trial In The State Court Litigation Rapidly Approaching, Plaintiffs File This Retaliatory Action.**

3      The State Court Litigation was initially set for trial for June 2021.  (Mason Decl., Ex. 2 [Registrar of Actions in the State Court Litigation, Case No. 30-2019-01065013-CU-BC-CJC].)  Just months before trial, Plaintiffs filed this action in January 2021 opening an ancillary front in its battle with Peterson.

7      Unsurprisingly, this federal lawsuit is repetitive of the State Court Litigation. In fact, Plaintiffs made Peterson aware of its claims against the Octane Defendants, Kovacs, and its additional claims against Peterson by proposing Peterson and Plaintiffs stipulate to filing these claims in a cross-complaint in the State Court Litigation in June 2020.  (Dkt No. 42 [Joint Case Management Report] at p. 4, ln. 26 to p. 5, ln. 17.)  Yet, Plaintiffs did not seek leave to amend to file their claims in the ongoing State Court Litigation.  (*Id.*)  Rather, Plaintiffs waited an additional six months to file a Complaint in this Court that was "practically identical" to its proposed cross-complaint.  (*Id.*)

16      At the center of the State Court Litigation is Truinject's failure to repay the promissory note owed to Peterson pursuant to the parties' Note Repurchase Agreement.  (FAC, Ex. 1 [State Court FAC] ¶¶ 37-45.)  The State Court Litigation also expressly puts at issue Truinject's purported justifications for its failure to repay the notes, with Plaintiffs alleging that Peterson did not have the required consent from other note holders to collect on the notes and to commence litigation for such repayment.  (Mason Decl. Ex. 3 [State Court Litigation Cross-Complaint] ¶ 19 ("[Peterson] has less than the required fifty-one percent (51%) of the aggregate principal amount of the outstanding notes and nonetheless commenced litigation to collect on the Notes without agreement of the Majority Holders [of Truinject's promissory notes].").)  This subsequently filed federal litigation similarly contains allegations regarding the reasons for Truinject's non-repayment of Peterson's Note Repurchase Agreement.  (*See, e.g.,* FAC ¶¶ 96-98, 102-108.)

-13-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

MEMORANDUM OF POINTS AND AUTHORITIES

4838-2286-4619v19/106556-0001

8:21-cv-00063

Peterson is alleged to have used information he obtained from Kovacs to support his claims in the State Court Litigation that he was misled into investing in Truinject by Rios's false statements regarding Truinject's prospects (FAC, Ex. 1 [State Court FAC] ¶ 61) and that Rios misused company funds. (*Id.* ¶ 33.) Plaintiffs similarly have brought a variety of claims in this federal action against both Kovacs and Peterson relating to Kovacs allegedly improperly obtaining and sharing information about the company's prospects and Rios' spending with Peterson, including trade secret misappropriation, violation of the Computer Fraud and Abuse Act, breach of contract, and breach of fiduciary duty. (*See, e.g.,* FAC ¶¶ 123-198, 260-88.)

But none of these claims have anything to do with the Octane Defendants. The only two allegations against the Octane Defendants are: (1) the innocuous conversation between Carpou and Allergan executive Meury, during which Meury (and not Carpou) is alleged to have shared information; and (2) that Carpou shared the January 12, 2017 e-mail in late March 2019 with Peterson's attorney as part of the State Court Litigation. The Octane Defendants therefore are left to conclude that they have been sued by Plaintiffs purely to create leverage in their dispute with Peterson, since Peterson serves on Octane's executive committee. (FAC ¶¶ 9, 33, 35.)

## III.  ARGUMENT

### A.    This Case Should Be Stayed Under The *Colorado River* Doctrine In Favor Of The State Court Litigation.

As trial fast approached in the State Court Litigation, Plaintiffs filed this lawsuit apparently to pressure Peterson by dragging those around him — including the Octane Defendants — into redundant federal litigation. But the *Colorado River* doctrine prohibits such tactics. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-14-

MEMORANDUM OF POINTS AND AUTHORITIES

4838-2286-4619v19/106556-0001

8:21-cv-00063

"The threshold question in determining whether abstention is appropriate under *Colorado River* is whether the federal and state court actions are 'substantially similar.'" *Xpo GF Am., Inc. v. Qiuheng Liao*, 2019 U.S. Dist. LEXIS 229172, at *7 (C.D. Cal. Sep. 27, 2019) (quoting *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)). "Suits need not be identical to be parallel, and the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel." *Xpo GF Am., Inc. v. Qiuheng Liao*, 2019 U.S. Dist. LEXIS 229172, at *8 (internal citations and quotations omitted).

If the state and federal actions are substantially similar, then the Court analyzes the following factors to determine whether to stay the federal action:

> (1) which court first assumed jurisdiction over any [*in rem* or *quasi in rem*] property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1166 (9th Cir. 2017).

### 1.    This Case Is "Substantially Similar" Because It Is A Mere "Spin-Off" Of The State Court Litigation.

Federal courts do not hesitate to find that federal cases that are a mere "spin-off" of state court cases are "substantially similar" under the *Colorado River* doctrine.  For example, in *Xpo GF Am., Inc. v. Qiuheng Liao,* 2019 U.S. Dist. LEXIS 229172 (C.D. Cal. Sept. 27, 2019), the defendant in a state court case brought affirmative claims in federal court against the state court plaintiff and other parties not named in the state court case that had allegedly shared

-15-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

MEMORANDUM OF POINTS AND AUTHORITIES

4838-2286-4619v19/106556-0001

8:21-cv-00063

confidential information with the state court plaintiff relevant to the state court proceedings.  Based on this alleged sharing of confidential information, the state court defendant alleged breach of contract, as well as violations of the Computer Fraud and Abuse Act and the Defend Trade Secrets Act.  *Id.*, at *5-6.  The Court found that the federal action was a "spin-off" of the state court case:

> Without discovery in state court, [the federal court plaintiff] would not have been aware of its potential claims raised before this Court. In addition, [the federal court] Complaint and [the state court] cross-complaint contain similar allegations and causes of action. . . .  And both contain several of the same causes of action against [the federal defendant] . . . which will require a court to determine whether [the state court plaintiff] breached provisions of her employment agreement. Finally, [the federal court plaintiff's] allegations that [federal court defendants] stole confidential information and trade secrets from [the federal court plaintiff] are based on notes, emails, and other communications that [the federal court defendants] preserved—and this evidence details [the] allegations that are at the crux of the state court case. The Court finds these similarities are sufficient to proceed to an analysis of the *Colorado River* doctrine factors.

*Xpo*, 2019 U.S. Dist. LEXIS 229172, at *8-9.

As in *Xpo*, the issues in the State Court Litigation are substantially similar to the issues in this litigation.  To start with, both cases revolve around Peterson's investment into Truinject. (*Compare* FAC ¶¶ 57-59, 88-108 *with* FAC, Ex. 1 ¶¶ 5-8, 24-30.)  Both cases will require an examination of whether Truinject made a representation to Peterson that Allergan had offered to acquire Truinject, and whether that statement was true. (*Compare* FAC ¶¶ 204-209, *with* FAC, Ex. 1 at ¶ 61.e.)  Both cases also will require an examination of evidence regarding whether Rios misused company funds. (*Compare* FAC ¶ 109-110, 119-120 *with* FAC, Ex. 1 ¶¶ 31-33.)  Both cases also revolve around Truinject's failure to repay

-16-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

MEMORANDUM OF POINTS AND AUTHORITIES

4838-2286-4619v19/106556-0001

8:21-cv-00063

Peterson's notes, whether Truinject's failure to make those payments to Peterson was justified, and Peterson's response to Truinject's failure to pay.  (*Compare* FAC ¶¶ 19-21, 105-108 *with* FAC, Ex. 1 ¶¶ 34-45.)

Also as in *Xpo*, Plaintiffs' federal action is based on allegations that the defendants wrongfully shared information with co-Defendant Peterson in the State Court Litigation.  Indeed, just as in *XPO*, Plaintiffs' federal case alleges contract, trade secret and Computer Fraud and Abuse Act claims based upon the alleged misuse of this confidential information in the State Court Litigation.  (*See, e.g.*, FAC ¶¶ 109-10, 113-117, 139.)   In other words, without the State Court Litigation, Plaintiffs "would not have been aware of [their] potential claims raised before this Court."  *Xpo GF Am., Inc.*, at *8.

Since this retaliatory federal action is a mere "spin-off" of the State Court Litigation, *Colorado River* abstention applies.  *See, e.g., Xpo GF Am., Inc. v. Qiuheng Liao*, 2019 U.S. Dist. LEXIS 229172, at *8-9 (C.D. Cal. Sep. 27, 2019) (finding case met criteria for *Colorado River* doctrine); *Amin v. Advanced Sterilization Prods. Servs.*, 2019 U.S. Dist. LEXIS 13254 (C.D. Cal. Jan. 7, 2019) (finding non-identical employment cases "substantially similar" due to "many common questions of law and fact").

> **2.     The Facts Here Weigh Heavily In Favor Of Staying This Case Until the State Court Proceedings Have Concluded.**

This federal lawsuit should be stayed in favor of the far more advanced State Court Litigation to avoid burdening the Court, the litigants, and witnesses with duplicative proceedings.  In fact, six of the eight factors articulated by the Ninth Circuit favor such a stay and the remaining factors are neutral.

> **i.     The Fourth And Seventh *Colorado River* Factors Favor A Stay To Discourage Forum Shopping.**

The fourth and seventh *Colorado River* factors heavily favor a stay because the State Court Litigation was filed long before this federal action, and Plaintiffs

-17-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

MEMORANDUM OF POINTS AND AUTHORITIES

4838-2286-4619v19/106556-0001

8:21-cv-00063

are now engaged in transparent forum shopping.  Indeed, where a party to a state lawsuit subsequently filed a federal case years later, courts have found that abstention is "strongly" favored.  *See, e.g., Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989) ("Apparently, after three and one-half years, [the federal plaintiff] has become dissatisfied with the state court and now seeks a new forum for their claims. We have no interest in encouraging this practice."); *see also United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1206 (9th Cir. 2021) (reaffirming that the court "considers a lapse in time in determining whether a party has engaged in forum shopping").

The fourth factor weighs in favor of a stay because the State Court Litigation was filed on April 19, 2019, whereas this federal action was not filed until almost two years later on January 12, 2020.  While this federal action has not even moved beyond the pleading stage, the State Court Litigation has advanced through challenges to the pleadings and discovery, with a trial date of May 2022.  (Mason Decl., Ex. 2 [State Court Litigation Registrar of Actions].)  Therefore, this federal action should be stayed in favor of the State Court Litigation.  *See, e.g., Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989) (stay favored if state court action has advanced through discovery); *Amin*, 2019 U.S. Dist. LEXIS 13254, at *29 (finding fourth factor weighed in favor of abstention when the state court action preceded the federal action by years and that the state court action had "already resolved multiple challenges to the pleadings"); *see also Xpo GF Am., Inc.*, 2019 U.S. Dist. LEXIS 229172, at *12 (finding fourth factor weighed in favor of abstention where the federal action remained in the pleading stage and "[t]he state court has made numerous rulings, the parties have engaged in discovery, and there are dates set for summary adjudication briefing and trial").

The seventh factor weighs strongly in favor of a stay because Plaintiffs' delay in filing this case reeks of forum shopping.  In *Xpo*, the plaintiff to the federal action had received the relevant information it based its federal claims upon

-18-

STRADLING YOCCA CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

MEMORANDUM OF POINTS AND AUTHORITIES

4838-2286-4619v19/106556-0001

8:21-cv-00063

in the state court action three and a half years earlier, but waited until trial approached in the state court case to bring the related federal action:

> In light of these [upcoming state court motion and trial] deadlines and the fact that Plaintiff has sat on its claims, it appears that Plaintiff filed in this Court because it is dissatisfied with the state court proceedings and seeks a new forum for its additional claims. ***The Court is also concerned with the apparent 'reactive nature' of this action*** because it appears that Plaintiff has strategically sought this Court's jurisdiction to force [the state court plaintiff] into bearing the burden and expense of prosecuting and defending two actions in two forums. For these reasons, this factor weighs in favor of abstention.

*Xpo GF Am., Inc.*, 2019 U.S. Dist. LEXIS 229172, at *16-17 (emphasis added).

Plaintiffs have engaged in the same forum shopping as the plaintiffs in *Xpo* and *Nakash*. Plaintiffs have been aware of these potential claims against the Octane Defendants and the other defendants since the filing of the State Court Litigation in April 2019. Indeed, Plaintiffs initially stated their intention to file these claims in a cross-complaint in the State Court Litigation in June 2020. (Dkt No. 42 [Joint Case Management Report] at p. 4, ln. 26 to p. 5, ln. 17.) But, apparently unsatisfied with the state court forum, Plaintiffs instead filed this federal action in January 2021, six months before trial was initially scheduled in the State Court Litigation. Such forum shopping should not be countenanced.

> ii. **The Third, Fifth, Sixth And Eighth *Colorado River* Factors Also Favor A Stay Because Substantial Overlap Exists Between This Case And The Earlier Filed State Court Litigation.**

The third, fifth, sixth, and eighth *Colorado River* factors also favor a stay because the State Court Litigation and the federal action substantially overlap. Since the State Court Litigation provides an adequate forum to resolve all issues

-19-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

MEMORANDUM OF POINTS AND AUTHORITIES

4838-2286-4619v19/106556-0001

8:21-cv-00063

1   between the parties, there simply is no reason for the Court and the parties to bear

2   the inconvenience and burden of piecemeal and redundant litigation in two courts.

3        The state court is perfectly capable of resolving the entire dispute between

4   the parties.  Indeed, the fifth factor supports a stay because most of the claims in

5   the FAC are brought pursuant to California law.  (*See* FAC, Counts III-X.)   The

6   only two federal claims in the FAC, for alleged violations of the Computer Fraud

7   and Abuse Act (FAC, Count II) and the Defense of Trade Secrets Act (FAC, Count

8   I) are both subject to concurrent state court jurisdiction.  *See Xpo GF Am., Inc.,*

9   2019 U.S. Dist. LEXIS 229172, at *14 (noting that concurrent state court

10  jurisdiction over Computer Fraud and Abuse Act and Defense of Trade Secrets Act

11  claims weighs in favor of abstention).  The sixth and eighth *Colorado River* factors

12  also therefore favor a stay because the State Court Litigation is an adequate forum

13  to resolve the entire dispute between the parties.  *Id.* at *15 ("in the absence of any

14  indication that the state proceeding might be inadequate, this factor weighs in favor

15  of abstention").

16       The third factor also weighs in favor of a stay because, if both the State

17  Court Litigation and this federal action are permitted to proceed, the Court and the

18  parties will waste time on piecemeal, redundant and unnecessary litigation.  There

19  is substantial overlap between this case and the State Court Litigation.  In fact,

20  Plaintiffs initially sought to file a cross-complaint that was "practically identical"

21  to the FAC in the State Court Litigation.  (Dkt No. 42 [Joint Case Management

22  Report] at p. 4, ln. 26 to p. 5, ln. 17.)  The State Court Litigation and this case both

23  revolve around whether Truinject lied about an Allergan offer to acquire it for

24  $150 million.  (*See* §. III.A.I., *supra*.)  These concurrent proceedings are already

25  creating, and will continue to create, duplicated efforts including discovery and

26  deposition of witnesses such as Peterson, Carpou, Rios, and Kovacs.  Indeed,

27  Truinject already has attempted to issue redundant subpoenas to Carpou and

28  Octane in the State Court Litigation.  (Mason Decl., Exs. 4-5 [Business Records

-20-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

MEMORANDUM OF POINTS AND AUTHORITIES

4838-2286-4619v19/106556-0001

8:21-cv-00063

1   Subpoena] and [Testimony and Production of Records Deposition Subpoena].)  A

2   stay is required to prevent the waste of resources that would result from duplicative

3   discovery.  *See, e.g., Xpo*, 2019 U.S. Dist. LEXIS 229172, at *11 (favoring

4   abstention, in part because both actions "would likely require depositions of the

5   same witnesses [and] entail discovery requests for the same documents").

6          Finally, if both the State Court Litigation and this federal action are

7   permitted to proceed, a real risk would exist of the two forums reaching conflicting

8   results.  As just one example, the State Court litigation will resolve Truinject's

9   reasons for failing to repay Peterson's promissory notes.  In the State Court

10  Litigation, Plaintiffs allege that Peterson did not have the requisite shareholder

11  consent to collect on the notes.  (Mason Decl., Ex. 3 [Plaintiffs State Court

12  Litigation Cross-Complaint] ¶¶ 18-22.)  However, contrary to the State Court

13  Litigation, the FAC here seems to allege that Truinject has not repaid the

14  Promissory Note because Peterson acted wrongfully towards Truinject.  (FAC ¶

15  108; *see also* FAC ¶ 20-21 ("Peterson threatened to harm Truinject if Truinject did

16  not agree to grant him equity within 48 hours of his demand.").)  Both the State

17  Court Litigation and the federal action also will directly address the representations

18  made to Peterson to induce him to invest in Truinject and whether Rios misused

19  Truinject funds.  (*See* § III.a.1., *supra.*)  The risk of conflicting rulings is evident.

20  *See Amin*, 2019 U.S. Dist. LEXIS 13254, at *29 (finding that abstention is favored

21  when duplicative efforts with the "state court would result in a waste of judicial

22  resources and possibly different results regarding the same underlying claims).[2]

23

24

25

26  ───────────────

[2] The first and second factors are neutral here because there is no property at stake
and the parties all are located in Orange County, California, the county where both
the State Court Litigation and the federal action are pending.  *See Amin*, 2019 U.S.
Dist. LEXIS 13254, at *28.

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-21-

MEMORANDUM OF POINTS AND AUTHORITIES

4838-2286-4619v19/106556-0001                                8:21-cv-00063

**B.    Alternatively, The Octane Defendants Request Dismissal Because Plaintiffs Fail To State A Claim Against Them.**

**1.    Plaintiffs Are Required To Plead In A Non-Conclusory Fashion Under *Twombly* & *Iqbal*.**

To survive a motion under Rule 12(b)(6), Plaintiffs must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" only if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion, the Court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678-80 (quoting *Twombly*, 550 U.S. at 555). Further, the Court must "determine whether the [pleaded factual allegations] give rise to an entitlement to relief." *Id.* at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.*

Plaintiffs only alleged two supposed instances of wrongdoing by the Octane Defendants: (1) the July 2017 conversation between Carpou and William Meury, an Allergan executive, during which Mr. Meury communicated Allergan's internal valuation of Truinject to Carpou; and (2) Carpou's sharing of the January 2017 "re: Lynn Salo" email with Peterson and others in 2019, the month before Peterson filed the State Court Litigation. These allegations simply cannot support a claim.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-22-

MEMORANDUM OF POINTS AND AUTHORITIES

4838-2286-4619v19/106556-0001

8:21-cv-00063

1  **2.      Plaintiffs' Allegations Regarding Carpou's Conversations**
2  **With Allergan Cannot State A Claim Because Carpou Is**
3  **Not Alleged To Have Shared Any Confidential Information**
4  **With Allergan.**

5  Plaintiffs base only the trade secret claim (Count I) and breach of confidence
6  claim (Count X) upon the alleged conversation between Carpou and Allergan's
7  Chief Commercial Officer, William Meury.   Both the trade secret and breach of
8  confidence claims require that the Octane Defendants wrongfully acquired or
9  shared Truinject's confidential information.  *See, e.g.*, *New Box Sols. LLC, v.*
10 *Davis*, 2018 U.S. Dist. LEXIS 164510, at *15 (C.D. Cal. Sep. 18, 2019)
11 (dismissing breach of confidentiality claim when plaintiff did not plead the
12 defendants disclosure of confidential information); *Openwave Messaging, Inc. v.*
13 *Open-Xchange, Inc.*, 2018 U.S. Dist. LEXIS 82853, at *12 (N.D. Cal. May 4,
14 2018) ("A trade secret consists of three elements: (a) information; (b) which is
15 valuable because it is unknown to others; and (c) which the owner has attempted to
16 keep secret.").[3]

17 Here, Plaintiffs only allege statements made *by Allergan*, not Carpou.  (FAC
18 ¶¶ 89, 144, 299 ("After finding out about Carpou's conversation with Allergan's
19 CCO . . . Rios wrote to . . . Carpou regarding the conversation stating, 'I was
20 completely surprised as to how a conversation with Meury [Chief Commercial
21 Officer of Allergan] went as far as him placing a value on Truinject and sharing
22 this with you. . . . Any conversation that goes into that kind of extend should be
23 something Truinject is conducting.'").)  Plaintiffs simply do not allege that Carpou
24 disclosed any of Truinject's information at all, let alone Truinject's confidential

25
26 [3] Plaintiffs have not specifically identified the trade secrets that are alleged to have
   been misappropriated.  *See, e.g., Acrisure of Cal., LLC v. SoCal Commer. Ins.*
27 *Servs.*, U.S. Dist. LEXIS 170027, at *8-9 (C.D. Cal. Mar. 27, 2019) (dismissing
   claim where plaintiff did not describe the trade secret); *Vendavo, Inc. v. Price f(x)*
28 *AG*, 2018 U.S. Dist. LEXIS 48637, at *9 (N.D. Cal. Mar. 23, 2018) (same).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-23-

MEMORANDUM OF POINTS AND AUTHORITIES

4838-2286-4619v19/106556-0001

8:21-cv-00063

information.  While Mr. Meury may have disclosed information that could qualify as an Allergan trade secret, ***Allergan's own internal valuation of Truinject*** is not a trade secret Truinject can claim as its own.

Plaintiffs also fail to explain how this conversation damaged them in any way.  (FAC ¶¶ 145, 233, 300.)  Such conclusory damage allegations are insufficient.  *Global Hawk Ins. Co. RRG v. Wesco Ins. Co.*, 424 F. Supp. 3d 848, 854 (C.D. Cal. 2019) (holding that contract claim requires damages); *Alta Devices, Inc. v. LG Elecs., Inc*., 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (same for trade secret claim); *Tele-Count Eng'rs, Inc. v. Pac. Tel. & Tel. Co.*, 168 Cal. App. 3d 455, 461 (1985) (same for breach of confidence).

Even if a conversation in which Carpou is not alleged to have said anything somehow could support a claim, Plaintiffs allege they knew about this conversation when it took place in July 2017.  (FAC ¶¶ 88, 89, 299.)  Plaintiffs' trade secret and breach of confidence claims (Counts I and X) based on this conversation are time barred because this lawsuit was not filed until January 2021.  *See* 18 U.S.C. § 1836(d) (DTSA claims must be brought no later than three years after discovery of alleged misappropriation); *Davies v. Krasna*, 14 Cal. 3d 502, 508 (1975) (three year statute of limitations for breach of confidence claims).

In sum, Plaintiffs do not allege that Carpou shared any Truinject confidential information with Allergan during this conversation, just that Allergan shared information with Carpou.  This conversation also took place outside the three year statute of limitations that applies to these claims.  Therefore, Counts I and X should be dismissed.

*///*

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-24-

MEMORANDUM OF POINTS AND AUTHORITIES

4838-2286-4619v19/106556-0001

8:21-cv-00063

**3.** **Plaintiffs' Allegations That Carpou Disclosed Allergan's Purported Offer To Acquire Truinject To Peterson Cannot State A Claim.**

    **i.** **The Purported Allergan Offer Could Not Have Been Truinject's Confidential Information Because Truinject Admits There Was No Such Offer And The Purported Offer Was Disclosed Independently By Peterson.**

Plaintiffs allege claims for breach of contract (Counts V and VI), breach of the covenant of good and fair dealing (Count VII), and breach of confidential relationship (Count X) based upon Carpou allegedly providing to Peterson and Peterson's counsel Reeves on March 25, 2019 an e-mail dated January 12, 2017 between Carpou and Rios.  (FAC ¶¶ 206-208.)  Plaintiffs allege that this email contained confidential information belonging to Truinject, specifically that Allergan had made an offer to acquire Truinject for $150 million.  (FAC ¶ 205 (alleging January 12, 2017 email stated "$150M is a good first offer").)

However, Truinject **denies** that Allergan ever made an offer to acquire Truinject and denies that Truinject ever suggested that such an offer had been made.  (*See* FAC ¶ 204 ("Truinject never received an offer [from Allergan]").)  Therefore, the statement that Truinject had received such an offer, a statement that was not made by Truinject and was not true, could not possibly be Truinject's confidential information.  Therefore, Counts V, VI, VII, and X must fail.

Moreover, the purportedly confidential (and allegedly untrue) information that Allergan had made an offer to acquire Truinject for $150 million was publicly disclosed by Peterson in the State Court Litigation.  The NDA provides:  "The Recipient's obligations in Section 2 [to maintain confidential information] will not apply to the extent any Confidential Information: (i) is now or hereafter becomes generally known or available to the public, through no act or omission on the part

-25-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

MEMORANDUM OF POINTS AND AUTHORITIES

4838-2286-4619v19/106556-0001

8:21-cv-00063

of Recipient . . . ."  (FAC, Ex. ¶ 3.)  In April 19, 2019, Peterson alleged in the State Court Litigation:  "Rios fraudulently induced Peterson and others to purchase convertible promissory notes by stating that Allergan—her former employer—had made a standing offer to acquire Truinject for at least $150,000,000." (RJN No. 1 [State Court Litigation Complaint] ¶ 10.)  Since this public disclosure was made *by Peterson* and not by Carpou, the NDA does not apply to this information. Therefore, Counts V, VI, and VII fail.

### ii.      Plaintiffs Cannot Allege Damages Related To The Disclosure Of The Purported Allergan Offer.

Finally, Plaintiffs' claims all of course require damages as an element. *Global Hawk Ins. Co. RRG v. Wesco Ins. Co.*, 424 F. Supp. 3d 848, 854 (C.D. Cal. 2019) ("breach of contract 'is not actionable without damage'") (quoting *Bramalea California, Inc. v. Reliable Interiors, Inc.*, 119 Cal. App. 4th 468, 473 (2004); *Luxul Tech. Inc. v. NectarLux, LLC*, 2016 U.S. Dist. LEXIS 78899, at *41 (N.D. Cal. June 16, 2016) (same for breach of covenant of good faith and fair dealing); *Tele-Count Eng'rs, Inc. v. Pac. Tel. & Tel. Co.*, 168 Cal. App. 3d 455, 461 (1985) (same for breach of confidence). Plaintiff cannot plead damages based on the disclosure of a stale offer two years after the offer was made, particularly since there never even was an offer.  Indeed, Plaintiffs do not even try.

Plaintiffs only offer the boilerplate allegation that "[a]s a result of Carpou's breach of the 7 October 2016 NDA, Truinject has been damaged in an amount to be proven at trial."  (FAC ¶¶ 233-234; *see also*, FAC ¶¶ 247, 255, 300.)  But damages cannot be pleaded in such a formulaic and conclusory fashion.  *See, e.g., New Box Sols., LLC, supra.,* at *16 (rejecting conclusory damage allegation); *Architectural Res. Grp., Inc. v. Hks, Inc.*, , 2013 U.S. Dist. LEXIS 20247, at *9 (N.D. Cal. Feb. 13, 2013) (same).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-26-

MEMORANDUM OF POINTS AND AUTHORITIES

4838-2286-4619v19/106556-0001

8:21-cv-00063

### iii.   Plaintiffs Tort Claims For Breach of Confidential Relationship Are Barred By the Litigation Privilege.

The litigation privilege bars Plaintiffs' tort claim for breach of confidential relationship against Carpou.  Plaintiffs base this claim on Carpou's alleged communications to Peterson that were then used as one piece of Peterson's Complaint in the State Court Litigation, but the litigation privilege protects Carpou's participation in the State Court Litigation.  (*See* FAC ¶¶ 111-117.)

California's expansive litigation privilege is designed to protect participants in lawsuits from never-ending tort liability.  *People ex rel. Gallegos v. Pac. Lumber Co.*, 158 Cal. App. 4th 950, 958 (2008) ("the principal purpose of [the litigation privilege] is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions").  The privilege is so broad that California courts have recognized there is a "mandate to resolve any doubt about whether the litigation privilege applies … in favor of applying it." *Id.* at 963.

The privilege applies to any communication:  "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Jacob B. v. County of Shasta*, 40 Cal. 4th 948, 955 (2007).

Plaintiffs allege that the "re Lynn Salo" email was communicated to Peterson in March 2019 in preparation for the filing of the State Court Litigation. (FAC ¶ 114 (alleging the "Lynn Salo" email was sent to and opened by Peterson and his counsel in March 2019, less than one month before Peterson filed the complaint in the State Court Litigation).)  The litigation privilege applies to conduct in preparation to file litigation. *See, e.g., Kearney v. Foley & Lardner, LLP,* 590 F.3d 638, 650 (9th Cir. 2009) (recognizing that litigation privilege applies when the "claims are based on conduct prior to the litigation") (citing *People ex rel. Gallegos v. Pacific Lumber Co.*, 158 Cal. App. 4th 950, 958 (Ct.

-27-

App. 2008)); *Wise v. Thrifty Payless, Inc.*, 83 Cal. App. 4th 1296, 1303, (2000) ("[t]he privilege extends beyond statements made in the proceedings, and includes statements made to initiate official action").  The litigation privilege also protects witnesses like Carpou from lawsuits based on their participation in litigation.  *See Aryana v. Roossien*, 312 F. App'x 853, 854 (9th Cir. 2009) (applying litigation privilege to potential witness's communications).

Thus, the litigation privilege bars the tort claim for breach of confidential relationship as it relates to the Octane Defendants' alleged sharing of the "re Lynn Salo" email with Peterson, Reeves, and others.  Count X should be dismissed.

### 4.   Several Claims Fail For Additional Reasons.

### i.   Carpou Is Not A Party To The NDA.

Under California law, "only the parties to a contract may be liable for a breach of the contract."  *Grayson Serv. v. Crimson Res. Mgmt. Corp.*, 2015 U.S. Dist. LEXIS 146445, *20 (E.D. Cal. Oct. 28, 2015) (citing *Wady v. Provident Life and Accident Ins. Co. of America*, 216 F.Supp.2d 1060, 1065 (C.D. Cal. 2002)).

Here, the NDA at issue is only between Truinject and Octane.[4]  It does not identify Carpou as a party or purport to cover him in any way.  Carpou is not mentioned anywhere in the NDA except in the signature block, where he signs his name.  Next to his signature, Carpou writes his title as "CEO," indicating Carpou signed in his representative capacity as Octane's CEO.  (FAC, Ex. 5.)

Carpou signing as CEO of Octane does not make Carpou personally liable for purported breaches of the NDA: "Directors and officers are not personally liable on contracts signed by them for and on behalf of the corporation unless they purport to bind themselves individually."  *Buckley v. Cracchiolo*, 2014 U.S. Dist.

---

[4] The NDA's introduction identifies the parties: "This Non-Disclosure Agreement ("this Agreement") is made as of the 7th day of October, 2016, between Truinject Medical Corp., a Delaware corporation ("Company"), whose address is 18662 MacArthur Blvd., Suite 104, Irvine, CA 92612, and Octane, a[n] (corporation or individual), whose address is _____ ("Recipient")."  (FAC, Ex. 5.)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-28-

MEMORANDUM OF POINTS AND AUTHORITIES

4838-2286-4619v19/106556-0001

8:21-cv-00063

LEXIS 17517, *10-11 (C.D. Cal. Feb. 7, 2014) (quoting *U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 595 (1970) (dismissing breach of contract claim because defendants only executed the contract on behalf of the company and therefore were not parties to the contract)).

*Smith v. Simmons*, 2007 U.S. Dist. LEXIS 70833 (E.D. Cal. Sept. 24, 2007) is on all fours.  In that case, as is the case here, the entity parties to the contract were clearly identified in the introductory paragraph of the agreement in question. *Id.* at *10.  And, as is the case here, the signatory officer identified his role with the entity on the signature block and "was never identified as a party who will perform the contract" in the agreement.  *Id.* at *10. The Court accordingly dismissed the claims against the officer.  *Id.* at *11.

Plaintiffs wrongly allege that Carpou executed the NDA in his individual capacity as a party to the NDA.  (*See, e.g.,* FAC ¶¶ 240, 250.)  But Plaintiffs' false allegations should be disregarded—even at the pleading stage—because they are belied by the NDA attached to the FAC.  *See Hartman v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008) ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit") (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Since Carpou was not a party to the NDA, Plaintiffs cannot sustain a claim for breach of the NDA against him personally.  Count V and Count VII, therefore, should be dismissed against Carpou for this independent reason.

### ii.    Plaintiffs' Covenant Of Good Faith And Fair Dealing Claims Are Impermissibly Duplicative Of Their Contract Claims.

Plaintiffs' breach of the covenant of good faith and fair dealing claims against the Octane Defendants fail because they are duplicative of the breach of contract claims.  *See Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289,

-29-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

MEMORANDUM OF POINTS AND AUTHORITIES

4838-2286-4619v19/106556-0001

8:21-cv-00063

1301 (C.D. Cal. 2015) ("a claim for breach of the covenant of good faith and fair dealing that is predicated upon the same underlying acts as a simultaneously asserted claim for breach of contract may be dismissed as duplicative")*; see also Trinity Hotel Investors, LLC v. Sunstone OP Props., LLC*, 2009 U.S. Dist. LEXIS 13692, *30-33 (C.D. Cal. Feb. 5, 2009) (dismissing breach of the implied covenant of good faith and fair dealing claim as duplicative of plaintiffs' breach of contract claim because plaintiffs "[did] not distinguish the good faith-fair dealing claim from the breach of contract claim," both of which were based on the same facts).

Here, the breach of contract claim and breach of the covenant of good faith and fair dealing claim rely on the same set of facts.  (*Compare* FAC ¶¶ 248-259 *with id.* ¶¶ 199-234.)  Since Plaintiffs make no effort to distinguish these claims, the Court should dismiss Plaintiffs' breach of the covenant of good faith and fair dealing claim as superfluous.  *See Wilder v. CBS Corp.*, 2013 U.S. Dist. LEXIS 190059, *13 (C.D. Cal. Feb. 13, 2013) (dismissing covenant of good faith and fair dealing claim because it relied on the same alleged acts as contract claim).

## IV.   CONCLUSION

For the reasons set forth above, the Octane Defendants respectfully request the Court stay this action in its entirety until the conclusion of the State Court Litigation or, in the alternative, dismiss all claims against the Octane Defendants, namely Count Nos. I, V, VI, VII, X, without leave to amend.

DATED:  June 28, 2021              STRADLING YOCCA CARLSON RAUTH
                                   A Professional Corporation


                                   By:  /s/ Andrew B. Mason
                                        Marc J. Schneider
                                        Andrew B. Mason
                                        Attorneys For Defendant
                                        OCTANe FOUNDATION FOR
                                        INNOVATION AND
                                        WILLIAM A. CARPOU

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-30-

MEMORANDUM OF POINTS AND AUTHORITIES

4838-2286-4619v19/106556-0001

8:21-cv-00063