Jeffrey H. Reeves, Esq. (State Bar No. 156648)
jreeves@tocounsel.com
Jessica H. Diotalevi, Esq. (State Bar No. 244501)
jdiotalevi@tocounsel.com
Michael E. Bareket, Esq. (State Bar No. 272230)
mbareket@tocounsel.com
THEODORA ORINGHER PC
535 Anton Boulevard, Ninth Floor
Costa Mesa, California 92626-7109
Telephone: (714) 549-6200
Facsimile: (714) 549-6201

Attorneys for Defendant James J. Peterson

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| GABRIELLE RIOS, AN INDIVIDUAL; AND TRUINJECT CORP., A DELAWARE CORPORATION, <br><br> Plaintiffs, <br><br> vs. <br><br> JAMES J. PETERSON, AN INDIVIDUAL; WILLIAM A. CARPOU, AN INDIVIDUAL; KIMBERLY L. KOVACS, AN INDIVIDUAL; AND OCTANE FOUNDATION FOR INNOVATION, A DELAWARE CORPORATION, <br><br> Defendants. | Case No. 8:21—cv-00063 JVS (KESx) <br><br> **DEFENDANT JAMES J. PETERSON'S NOTICE OF MOTION AND MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(B)(6); AND** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> [*Filed concurrently with Declaration of Michael E. Bareket; Request for Judicial Notice; and [Proposed] Order*] <br><br> Judge:   Honorable James V. Selna <br> Hearing Date:   September 13, 2021 <br> Hearing Time:  1:30 p.m. <br> Courtroom:    10C <br><br> Trial Date:    November 29, 2022 |

1229233.6/81603.05005

*DEFENDANT JAMES J. PETERSON'S NOTICE OF MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES*

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 13, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable James V. Selna in Courtroom 10C of the United States District Court for the Central District of California, Southern Division, located at 411 West 4th Street, Santa Ana, CA 92701, Defendant James J. Peterson ("Peterson"), by and through his counsel of record, will, and hereby does, move for an order staying this action under the doctrine outlined in *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976). A stay is appropriate in light of a previously filed and now pending Orange County Superior Court case that presents for adjudication the same legal and factual issues that are presented in the instant case —*James J. Peterson v. Truinject Corp., et al.,* Superior Court of the State of California, County of Orange, Case No. 30-2019-01065013-CU-BC-CJC (the "State Action").

Alternatively, Peterson will, and hereby does, move for an order  dismissing the First and Second Causes of Action of the First Amended Complaint (the "Federal FAC") filed by Plaintiffs Gabrielle Rios and Truinject Corp. (collectively, "Plaintiffs") (Dkt. 34) under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  Plaintiffs' only causes of action asserted against Peterson are the First and Second Causes of Action in the Federal FAC for Commission of Trade Secret Misappropriation in violation of the Defend Trade Secrets Act (the "DTSA Claim") and Computer Fraud in violation of the Computer Fraud Abuse Act (the "CFAA Claim").

The alleged wrongful conduct supporting the DTSA and CFAA claims arise solely out of Peterson's prosecution of the State Action and are thus barred against Peterson pursuant to the California litigation privilege, Cal. Civ. Code § 47(b), and the *Noerr-Pennington* doctrine.  Additionally, both claims constitute compulsory counter-claims that Plaintiffs were required to have brought in the State Action; their failure to do so precludes them from bringing those claims here.  Cal. Code Civ. Proc.

1229233.6/81603.05005

2

DEFENDANT JAMES J. PETERSON'S NOTICE OF MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES

§ 426.30.   As to the DTSA Claim, Plaintiffs fail to allege that Peterson misappropriated an actual trade secret.  And, as to the CFAA claim, the Federal FAC is completely devoid of any allegations of computer fraud that could support such a claim.

Peterson's Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities, Declaration of Michael E. Bareket, Request for Judicial Notice, all of the pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at, before, and after the hearing on this Motion.  Peterson's Motion is made following the conference of counsel pursuant to Local Rule 7-3, including a telephonic conference which took place on June 4, 2021.  (Declaration of Michael E. Bareket, ¶¶ 17-20, Exhs. 4-6.)

DATED:  June 28, 2021          THEODORA ORINGHER PC


By:      /s/ Michael E. Bareket
_____
         Jeffrey H. Reeves
         Jessica H. Diotalevi
         Michael E. Bareket
         Attorneys for Defendant James J. Peterson

1229233.6/81603.05005

3

DEFENDANT JAMES J. PETERSON'S NOTICE OF MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 11

I.    INTRODUCTION .................................................................................. 11

II.   FACTUAL AND PROCEDURAL BACKGROUND .................................... 13

    A.   Truinject and Rios ..................................................................... 13

    B.   Peterson Invests in Truinject ..................................................... 13

    C.   Truinject Defaults on the Notes ................................................. 14

    D.   Peterson Sues Truinject in Orange County Superior Court ........ 14

    E.   Peterson Files an Amended Complaint in the State Action ......... 15

    F.   Truinject and Rios Meet and Confer Regarding Their Intent to Bring Their Claims in the State Action .......................................... 16

    G.   Plaintiffs File a Duplicative Action in Federal Court .................. 17

    H.   Plaintiffs File the Federal FAC .................................................. 18

III.  PLAINTIFFS' FEDERAL ACTION SHOULD BE STAYED UNDER THE *COLORADO RIVER* DOCTRINE .......................................................... 19

    A.   The State and Federal Actions are Substantially Similar ............ 20

    B.   The *Colorado River* Factors Weigh in Favor of a Stay ............... 21

IV.   THE FEDERAL FAC SHOULD BE DISMISSED AS TO PETERSON BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM AGAINST HIM ...................................................................................................... 25

    .................................................................................................. 25

    A.   Legal Standard ........................................................................... 25

    B.   Plaintiffs' Claims are Barred by the Litigation Privilege ........... 26

    C.   Plaintiffs' Claims are Barred by the *Noerr-Pennington* Doctrine ........ 28

    D.   Plaintiffs' Claims are Barred as Compulsory Counterclaims .............. 29

    E.   The DTSA Claim Fails ............................................................... 31

        1.   Plaintiffs Fail to Allege a Trade Secret ........................... 31

        2.   Plaintiffs Fail to Allege that Peterson Acquired, Used or Disclosed the Purported Trade Secret Information .......... 33

    F.   The CFAA Claim Fails ............................................................... 34

G.     Allowing Plaintiffs Leave to Amend Would be Futile ......................... 35

V.     CONCLUSION ................................................................................. 35

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

THEODORA ORINGHER
COUNSELORS AT LAW

1229233.6/81603.05005

5

*DEFENDANT JAMES J. PETERSON'S NOTICE OF MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES*

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

### <u>Cases</u>

4
5
*Action Apartment Assn., Inc. v. City of Santa Monica*,
   41 Cal. 4th 1232 (Cal. 2007) .................................................................26

6
7
*Adams v. Johnson*,
   355 F.3d 1179 (9th Cir. 2004) ..............................................................26

8
9
*Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.*,
   843 F.2d 1253 (9th Cir.1988) ..........................................................22, 23

10
11
*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................25, 26

12
13
14
*Beats Elec., LLC v. Lamar*,
   No. CV 14-7537 FMO (MRWx), 2015 WL 9694787
      (C.D. Cal. Aug. 31, 2015).................................................................30

15
16
*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................25

17
18
*Bergstein v. Stroock & Stroock & Lavan LLP*,
   236 Cal. App. 4th 793 (2015) ..........................................................27, 28

19
20
*Calendar Research LLC v, StubHub, Inc.*,
   No. 2:17-cv-04062-SVW-SS, 2017 WL 10378336 (C.D. Cal. Aug. 16, 2017) ...33

21
22
*Cervantes v. Countrywide Home Loans, Inc.*,
   656 F.3d 1034 (9th Cir. 2017) ..............................................................35

23
24
*Cheiker v. Prudential Ins. Co.*,
   820 F.2d 334 (9th Cir. 1987) ................................................................29

25
26
*Cisco Systems, Inc. v. Chung*,
   462 F. Supp. 3d 1024 (N.D. Cal. 2020).................................................33

27
28
*Colorado River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976)..............................................................................19

THEODORA ORINGHER
COUNSELORS AT LAW

1229233.6/81603.05005

6

*DEFENDANT JAMES J. PETERSON'S NOTICE OF MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES*

*Cooper v. Jones,*
    No. 214CV0453KJMACP, 2017 WL 569628 (E.D. Cal. Feb. 13, 2017) ............24

*Currier v. Chow*,
    270 Fed. App'x. 471 (9th Cir. 2007) ...................................................................30

*Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*,
    548 F.3d 1184 (9th Cir. 2008) ............................................................................19

*Finton Constr. Inc. v. Bidna & Keys, APLC*,
    238 Cal. App. 4th 200 (2015) .............................................................................27

*Freeman v. Lasky, Haas & Cohler,*
    410 F.3d 1180 (9th Cir. 2005) ............................................................................29

*Gamble v. Kaiser Foundation Health Plan, Inc.,*
    348 F. Supp. 3d 1003 (N.D. Cal. 2018)..............................................................28

*Hansen v. Dept. of Corrections & Rehabilitation,*
    171 Cal. App. 4th 1537 (2008) ...........................................................................27

*Imax Corp. v. Cinema Technologies, Inc.,*
    152 F.3d 1161 (9th Cir. 1998) ............................................................................31

*In re Countrywide Fin. Corp. Derivative Litig.*,
    542 F. Supp. 2d 1160 (C.D. Cal. 2008) ..............................................................20

*In re Crown Vantage, Inc.,*
    421 F.3d 963 ........................................................................................................29

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ............................................................................26

*JustMed, Inc. v. Byce,*
    600 F.3d 1118 (9th Cir. 2010) ............................................................................34

*Krieger v. Atheros Communications, Inc.*,
    776 F. Supp. 2d 1053 (N.D. Cal. 2011)..............................................................19

*Laguna Beach Sober Living, LLC v. City of Dana Point,*
    No. SACV 19-00024 AG (JDEx), 2020 WL 947946 (C.D. Cal. Jan. 6, 2020) ....30

THEODORA ORINGHER
COUNSELORS AT LAW

*LVRC Holdings LLC v. Brekka*,
 581 F.3d 1127 (9th Cir. 2009) ................................................................ 34

*Mai Sys. Corp. v. Peak computer, Inc.*,
 991 F.2d 511 (9th Cir. 1993) .................................................................. 31

*McNair v. City and Cty. Of San Francisco*,
 5 Cal. App. 5th 1154 (2016) ................................................................... 27

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
 521 F.3d 1097 (9th Cir. 2008) ................................................................ 25

*Nakash v. Marciano*,
 882 F.2d 1411 (9th Cir.1989) ............................................................ 20, 23

*Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*,
 711 F.3d 1136 (9th Cir. 2013) ................................................................ 28

*Parziale v. HP, Inc.*,
 445 F. Supp. 3d 435 (N.D. Cal. 2020) ................................................... 34

*Pellerin v. Honeywell Int'l, Inc.*,
 877 F. Supp. 2d 983 (S.D. Cal. 2012) .................................................... 32

*People ex rel. Gallegaos v. Pacific Lumber Co.*,
 158 Cal. App. 4th 950 (Cal. App. 2008) ................................................ 26

*Quidel Corp. v. Siemens Med. Solutions USA, Inc.*,
 No. 16-cv-3059, 2020 WL 1820247 (S.D. Cal. Apr. 9, 2020) .............. 27

*R.R. Street & Co. Inc. v. Transport Ins. Co.*,
 656 F.3d 966 ...................................................................................... 21, 23

*Redbox Automated Retail, LLC v. Buena Vista Home Entertainment, Inc.*,
 399 F. Supp. 3d 1018 (C.D. Cal. 2019) ................................................. 29

*Revolon Monterey Energy LLC v. Peak Operator LLC*,
 No. 13-7048 PSG (MRW), 2013 WL 12123689 (C.D. Cal. Dec. 27. 2013) ........ 19

*Robb v. Connolly*,
 111 U.S. 624 (1884) ............................................................................... 23

THEODORA ORINGHER
COUNSELORS AT LAW

*DEFENDANT JAMES J. PETERSON 'S NOTICE OF MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES*

*Rusheen v. Cohen,*
    37 Cal. 4th 1048 ................................................................................26

*Silberg v. Anderson,*
    50 Cal. 3d 205 (1990) ..........................................................26, 27, 28

*Sosa v. DIRECTV, Inc.,*
    437 F.3d 923 (9th Cir. 2006) .....................................................28, 29

*Stone v. Powell,*
    428 U.S. 465 (1976).........................................................................23

*Swain v. CACH, LLC,*
    699 F. Supp. 2d 1117 (C.D. Cal. 2009) .......................................29, 30

*Tan v. GrubHub, Inc.,*
    171 F. Supp. 3d 998 (N.D. Cal. 2016)...............................................21

*Theme Productions, Inc. v. News America Marketing FSI,*
    546 F.3d 991 (9th Cir. 2008) ...........................................................28

*Theofel v. Farey-Jones,*
    359 F.3d 1066 (9th Cir. 2004) .........................................................29

*U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.,*
    971 F.2d 244 (9th Cir. 1992) ...............................................14, 16, 17

*Unified Grocers, Inc. v. VM International, Inc.,*
    No. EDCV 19-2365-MWF (SHKx),
       2020 WL 5370621 (C.D. Cal. Apr. 8, 2020) ....................................32

*United States v. Corinthian Colleges,*
    655 F.3d 984 (9th Cir. 2011) ...........................................................26

*United States v. State Water Resources Control Bd.,*
    988 F.3d 1194 (9th Cir. 2021) .........................................................14

*Vendavo, Inc. v. Price f(x) AG,*
    No. 17-cv-06930-RS, 2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ..................32

*DEFENDANT JAMES J. PETERSON'S NOTICE OF MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES*

*XPO GF Am., Inc. v. Qiuheng Liao*,
  No. CV 19-4173 PA (MAAX), 2019 WL 8226077
    (C.D. Cal. Sept. 27, 2019) ...................................................................20, 21, 23

## **Statutes**

18 U.S.C. § 1030(a) ..............................................................................................35

18 U.S.C. § 1030(g) ..............................................................................................35

18 U.S.C. § 1836(b)(1) .....................................................................................32, 34

18 U.S.C. § 1839(3) .........................................................................................32, 34

18 U.S.C. § 1839(5) ..............................................................................................34

Cal. Civ. Proc. Code § 426.30 ........................................................................31, 32

California Civil Code § 47(b) ..........................................................................18, 27

## **Rules**

Fed. R. Civ. P. 12(b) .......................................................................................18, 19

Fed. R. Evid. Rule 201..........................................................................................14

THEODORA ORINGHER
COUNSELORS AT LAW

*DEFENDANT JAMES J. PETERSON'S NOTICE OF MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO
DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This case should never have been filed.  For over two years, Defendant James J. Peterson ("Peterson") and Plaintiffs Truinject Corp. ("Truinject" or the "Company") and Gabrielle Rios ("Rios") have been engaged in litigation in Orange County Superior Court in *James J. Peterson v. Truinject Corp., et al.*, Superior Court of the State of California, County of Orange, Case No. 30-2019-01065013-CU-BC-CJC (the "State Action").  Plaintiffs' First Amended Complaint (the "Federal FAC") not only concerns the same contracts, relationships, and disputes at issue in the State Action, but Plaintiffs' claims against Peterson ***arise out of Peterson's prosecution of the State Action itself***.

The State Action concerns claims by Peterson, a Truinject investor and the holder of two Convertible Promissory Notes issued by Truinject (the "Notes"), against Rios and Truinject based on the Company's failure to pay the Balances due on those Notes and for Truinject's and Rios's intentional misrepresentations made to fraudulently induce Peterson (and others) to invest in the Company.  In support of Peterson's First Amended Complaint in the State Action (the "State FAC"), Peterson alleges, *inter alia*, that in January 2017, Rios fraudulently misrepresented that Truinject had an offer to acquire the Company for $150 million, when no such offer existed.  Peterson further alleges that Rios misrepresented that the Company would use the proceeds from Peterson's Notes to develop Truinject's technology and secure a financing round or acquisition; instead, the funds were spent on lavish meals, personal airfare and hotels, and "loans" from the Company to Rios.

In 2019, Plaintiffs filed a breach of contract cross-complaint against Peterson in the State Action.  In June 2020, Plaintiffs indicated they would file an amended cross-complaint in the State Action asserting the very same claims, against the very same parties, as those Plaintiffs allege in this action.  Plaintiffs' proposed new claims against Peterson all arose from alleged disclosure in the State FAC of what Plaintiffs

11

THEODORA ORINGHER
COUNSELORS AT LAW

claimed to be trade secret or confidential information belonging to Truinject. But, after Peterson's counsel pointed out the fatal deficiencies in Plaintiffs' claims – including that their allegations against Peterson were barred by California's litigation privilege and that the alleged "confidential information" was neither misappropriated nor actionable trade secrets – Plaintiffs elected not to seek leave to bring these claims.

Instead, in what can only be described as a brazen litigation tactic, Plaintiffs proceeded to file here in federal court essentially the same claims they had abandoned in the State Action. Plaintiffs' improper motives in filing this federal case include a desire (1) to force Peterson to incur greater legal fees and suffer further delay, (2) to drive a wedge between Peterson and his Co-Defendants, who are key witnesses to the fraud allegations in the State Action, and (3) to avoid application of the California litigation privilege. This transparent forum shopping need not be tolerated by this Court, and Peterson respectfully urges the Court to stay this action pending resolution of the State Action.

If the Court does not stay this action, however, the Federal FAC should be dismissed because Plaintiffs fail to state a claim against Peterson. The Federal FAC purports to assert two causes of action against Peterson: (1) trade secret misappropriation in violation of the Defend Trade Secret Act ("DTSA"); and (2) computer fraud in violation of the Computer Fraud Abuse Act ("CFAA"). Though the Federal FAC spans 59 pages and includes 300 paragraphs of allegations, the only alleged conduct underlying the two claims against Peterson is that Peterson disclosed allegedly trade secret or confidential information in his pleadings in the State Action. These allegations fail to support a claim against Peterson.

*First*, Peterson's prosecution of the State Action, and his pleadings filed therein, constitute privileged petitioning activity protected from retaliatory litigation by the California litigation privilege and the *Noerr-Pennington* Doctrine. *Second*, Plaintiffs' claims against Peterson are compulsory counterclaims that Plaintiffs waived by failing to bring them in the State Action. *Third*, the DTSA claim fails

THEODORA ORINGHER
COUNSELORS AT LAW

because Plaintiffs do not plead any actionable misappropriation of trade secret information. The alleged "trade secrets" are actually years-old travel and meal expenses incurred by Rios and a *lie* Rios told to Truinject investors about a ***non-existent offer*** to acquire the Company, none of which had any independent commercial value derived from their secrecy. Moreover, Peterson did not make commercial use of any such information, he merely alleged facts in a pleading. ***Finally***, as to the CFAA claim, the Federal FAC is completely devoid of *any* allegations of conduct by Peterson that could support such a claim.

Peterson respectfully requests the Court to stay this action or, alternatively, dismiss both of Plaintiffs' claims asserted against Peterson without leave to amend.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Truinject and Rios

In 2013, Rios founded Truinject, which claims to be a technology company that developed a technology suite comprised of a "smart" syringe, injection training software, and an anatomical model of a human head to train health care providers to practice facial injections. (Federal FAC ¶¶ 1, 39.) Plaintiffs allege that the Company had a working prototype of its technology by March 2013. (*Id.* ¶ 40.) To finance the Company, Truinject issued convertible promissory notes to investors. (*Id.* ¶ 1.)

### B.   Peterson Invests in Truinject

Peterson was the President and CEO of Microsemi, a semiconductor company based in Orange County until it was acquired in 2018. (Federal FAC ¶ 10.) Peterson is also a leader and investor in the Orange County business community, including through his involvement with Defendant Octane Foundation for Innovation ("Octane"), an Orange County-based non-profit corporation that supports the growth of local technology businesses. (*Id.* ¶¶ 5, 34.) Octane's CEO, Defendant William Carpou ("Carpou"), brought Truinject to Peterson's attention. (*Id.* ¶ 9.)

Rios provided Peterson with information and made representations regarding the Company, including with a purported demonstration of Truinject's technology, to

1229233.6/81603.05005

13

*DEFENDANT JAMES J. PETERSON'S NOTICE OF MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES*

THEODORA ORINGHER
COUNSELORS AT LAW

induce him to invest in Truinject.  (*Id.* at 16:1-17, 18:1-13.)  In reliance on these representations, on November 26, 2016, Truinject issued and Peterson purchased a Convertible Promissory Note for the principal sum of $400,000.  (*Id*. ¶ 58.)  On February 12, 2017, Truinject issued and Peterson purchased a Convertible Promissory Note for the principal sum of $450,000.  (*Id*. ¶ 81.)

### C.    Truinject Defaults on the Notes

Ultimately, Peterson demanded repayment on his Notes and, on October 17, 2017, the Company and Peterson entered into a Note Repurchase Agreement ("NPA").  (Federal FAC ¶ 96.)  The Company did not perform pursuant to NPA, however, only redeeming $200,000 of the Balance due on Peterson's Notes in a payment made in November 2017. (*Id.*)  More than a year after entering into the NPA, the Notes had still not been redeemed and the Company was thus in default.  (*Id.* ¶ 104.)

### D.    Peterson Sues Truinject in Orange County Superior Court

On April 19, 2019, Peterson filed a Complaint against Truinject in the State Action.  (Request for Judicial Notice[1] ("RJN"), ¶ 1, Exh. A (the "State Complaint"); Declaration of Michael E. Bareket ("Bareket Decl.") ¶¶ 2-3.)  In the State Complaint, Peterson asserted a breach of contract claim against Truinject for its failure to pay the Balance owed on the Notes after they matured and Peterson made a demand for payment.  (State Complaint at ¶¶ 29-32.)

On October 1, 2019, Truinject filed a Cross-Complaint in the State Action asserting a breach of contract cause of action against Peterson.  (RJN, ¶ 2, Exh. B.

---

[1] Consideration of evidence of forum shopping is proper when evaluating a motion for a *Colorado River* stay.  *See*, *e.g.*, *United States v. State Water Resources Control Bd.*, 988 F.3d 1194, 1206-08 (9th Cir. 2021).  Courts may also properly take judicial notice of court filings in concurrent state court proceedings when determining whether to stay proceedings under the *Colorado River* doctrine.  *See*, *e.g.*, *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); *see also* Fed. R. Evid. Rule 201.

1229233.6/81603.05005

14

*DEFENDANT JAMES J. PETERSON'S NOTICE OF MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES*

THEODORA ORINGHER
COUNSELORS AT LAW

("State Cross-Complaint"); Bareket Decl. ¶ 4.)   In its State Cross-Complaint, Truinject alleged that, under the terms of the Notes, Peterson lacked the requisite Majority Noteholder status to maintain the State Action.  (State Cross-Complaint at ¶¶ 27-32.)  Despite alleging facts amounting to an affirmative defense to Peterson's claims, rather than an actionable claim, Truinject nonetheless sought as damages the cost of defending the State Action.  (State Cross-Complaint at ¶ 34; Bareket Decl. ¶¶ 14-15, Exh. 3 at 48:18-20.)   Truinject's Answer to the State Complaint also included allegations that Truinject supported with reference to alleged "hack[ing]" by Kovacs and Peterson's publishing of "trade secrets" in the State FAC.  (Bareket Decl. ¶ 16, Exh. 3 at 49:1-51:19.)

### E.   Peterson Files an Amended Complaint in the State Action

Through discovery and investigation in the State Action, Peterson realized Plaintiff's representations to induce his investment in Truinject were false.  Therefore, on October 4, 2019, Peterson sought leave to file a First Amended Complaint in the State Action.  (RJN ¶ 3, Exh. C at 5:17-19; Bareket Decl. ¶ 5.)  Truinject opposed Peterson's motion for leave to file the State FAC by alleging, *inter alia*, that the State FAC "go[es] into detail regarding protected information that was illegally taken from Truinject's protected computer system by [Defendant Kimberly] Kovacs . . . ." (RJN ¶ 4, Exh. D at 5:17-19.)   Truinject further argued that "Trade Secret information obtained from Truinject's protected QuickBooks account appears in the Proposed FAC." (*Id.* at 5:22-26.)  The court did not find Truinject's opposition meritorious and granted Peterson leave to file the State FAC, which Peterson did on January 21, 2020. (Dkt. No. 34-1 (the "State FAC").)

The State FAC added Rios as a defendant and asserted new causes of action for fraud and securities fraud against Plaintiffs.  (*See, generally,* State FAC.)  The State FAC alleged, *inter alia*, Rios induced Peterson to invest in Truinject by falsely representing that: (1) the Company's technology had been validated and was commercially ready for market in 2017, (2) in January 2017, Allergan, Inc.

("Allergan") made an offer to acquire Truinject for at least $150,000,000, and (3) the proceeds from Peterson's Notes would be used to further the Company's goals of bringing its Technology to market and to complete a financing round or acquisition. (*Id.* ¶¶ 21-30.)   Peterson subsequently discovered, however, that Truinject's technology was not commercially viable, Allergan made no offer to acquire the Company, and Rios used the proceeds from Peterson's Notes "on spending unrelated to the development of Truinject's technology or business" including expensive meals, luxury hotels, and airfare.  (*Id.* ¶¶ 24, 28, 31-33, 61, 68.)

### F.   Truinject and Rios Meet and Confer Regarding Their Intent to Bring Their Claims in the State Action

On June 26, 2020, Plaintiffs' counsel sent a letter to Peterson's counsel to inquire if Peterson would stipulate to an Amended Cross-Complaint.  (Bareket Decl. ¶ 8, Exh. 1 (the "June 2020 Letter").)  The June 2020 Letter enclosed what Plaintiffs described as a First Amended Cross-Complaint to be filed in the State Action.  (*Id.* at pp. 2-82 (the "Proposed Amended Cross-Complaint").

The Proposed Amended Cross-Complaint named as Cross-Defendants Peterson, Carpou, Octane, Defendant Kimberly Kovacs ("Kovacs"), and Peterson's counsel, Jeffrey Reeves ("Reeves").  (*See, generally, id.*)  Plaintiffs set forth sixteen causes of action in the Proposed Amended Cross-Complaint, including five causes of action against Peterson.  (*See* Proposed Amended Cross-Complaint at ¶¶ 170-184 (breach of contract), 277-292 (breach of the implied covenant of good faith and fair dealing), 375-382 (aiding and abetting breach of fiduciary duty), 390-416 (trade secret misappropriation), and 452-468 (interference with contractual relationship).)  The alleged wrongful conduct underlying the Proposed Amended Cross-Complaint included that the State FAC refers to Truinject confidential information and trade secrets.  (*Id.* at ¶¶ 145-160, 163-169, 378-380, 404-410.)

Peterson and Plaintiffs engaged in a detailed meet and confer about deficiencies in the allegations Plaintiffs set forth in the Proposed Amended Cross-Complaint.

THEODORA ORINGHER
COUNSELORS AT LAW

(Bareket Decl. at ¶¶ 10-11, Exh. 2.)  Among the deficiencies discussed was that the alleged wrongful conduct by Peterson – including, but not limited to, the receipt and publication of allegedly improperly obtained trade secret information in the State Action pleadings – was protected by the litigation privilege set forth in California Civil Code § 47(b).  (*Id.*)  Peterson's counsel further advised Plaintiffs that, because the allegations against Peterson arose out of his constitutional right to petition (*i.e.* filing and prosecuting the State Action), the Proposed Amended Cross-Complaint would be subject to a Special Motion to Strike Strategic Litigation Against Public Participation (an "Anti-SLAPP" motion).  (*Id.*)

Recognizing that the Proposed Amended Cross-Complaint was fatally flawed and subject to an Anti-SLAPP challenge, Truinject and Rios never sought leave to bring these claims in the State Action.  (Bareket Decl. at ¶ 12.)  Peterson and Plaintiffs thus proceeded toward a June 21, 2021 trial date[2], and exchanged discovery regarding the allegations raised in the State FAC and State Cross-Complaint.

### G.   Plaintiffs File a Duplicative Action in Federal Court

Then, on January 12, 2021 – only five months before the State Action trial date – in a clear display of forum shopping and retaliatory litigation, Plaintiffs initiated this action by filing a Complaint in this Court.  (Dkt. No. 1 ("Federal Complaint").)  Like the Proposed Amended Cross-Complaint, the Federal Complaint named Peterson, Carpou, Octane, and Kovacs as Defendants and the Federal Complaint contained substantially the same allegations as the Proposed Amended Cross-Complaint.  (*Compare, generally,* Federal Complaint *with* Proposed Amended Cross-Complaint.)  Plaintiffs' Federal Complaint alleged seven causes of action against Peterson, five of which were set forth in the Proposed Amended Complaint: (1 & 2)

_____

[2] On May 18, 2020, the Orange County Superior Court served Notice setting trial in the State Action for June 21, 2021.  However, on April 2, 2021, the Orange County Superior Court ordered that the State Action trial be continued to May 2, 2022. (Bareket Decl. at ¶ 13.)

trade secret misappropriation under the Defend Trade Secrets Act ("DTSA") and California Uniform Trade Secrets Act, (*id.* ¶¶ 164-217), (3) liability under the Computer Fraud Abuse Act ("CFAA"), (*id.* ¶¶ 218-242), (4) a breach of contract, (*id.* ¶¶ 243-259), (5) breach of the implied covenant of good faith and fair dealing, (*id.* ¶¶ 333-349), (6) aiding and abetting breach of fiduciary duty, (*id.* ¶¶ 420-428), and (7) interference with contractual relationship, (*id.* ¶¶ 464-480).

On March 19, 2021, the parties met and conferred regarding deficiencies in the Federal Complaint, including Peterson's intent to bring a Motion to Stay, Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and an Anti-SLAPP Motion.  (Dkt. No. 30 (Second Joint Stipulation to Extend Time to Respond) at 2:27-3:4.)  Plaintiffs' counsel indicated Plaintiffs would dismiss certain causes of action and allegations, and the parties stipulated to a continuance to allow Plaintiffs to assess whether to dismiss the Federal Complaint in whole or in part.  (*Id.* at 3:5-14.)

## H.   Plaintiffs File the Federal FAC

On April 15, 2021, Plaintiffs filed the Federal FAC.  (Dkt. No. 34.)  The Federal FAC asserts two causes of action against Peterson: one cause of action for trade secret misappropriation under the DTSA, (Federal FAC ¶¶ 123-146), and one for violation of the CFAA, (Federal FAC ¶¶ 147-168).   As with the Proposed Amended Cross-Complaint and the Federal Complaint, the Federal FAC includes a number of inflammatory and wholly irrelevant allegations regarding Peterson.  (*See, e.g.,* Federal FAC ¶¶ 16, 20-21, 88-95, 105-108.)  Indeed, a number of the allegations appear solely related to Plaintiffs' affirmative defenses and counter-claims in the State Action.  (*See, e.g.,* Federal FAC ¶¶ 57-61, 80-83, 96-98, 104.)

Notwithstanding this irrelevant content, Plaintiffs base their two causes of action against Peterson on only a handful of allegations set forth in the 59-page Federal FAC.  Specifically, in support of their DTSA claim, Plaintiffs allege that Peterson disclosed Truinject trade secret information in pleadings filed in the State

THEODORA ORINGHER
COUNSELORS AT LAW

Action, specifically, information from Truinject QuickBooks® accounting records[3]. (Federal FAC ¶¶ 22, 109-110, 139-141). The CFAA claim, however, is completely devoid of allegations against Peterson. (Federal FAC ¶¶ 147-168.)

## III. PLAINTIFFS' FEDERAL ACTION SHOULD BE STAYED UNDER THE *COLORADO RIVER* DOCTRINE

Plaintiffs initiated this action as a cynical attempt to manufacture delay and costs and create leverage against Peterson in the State Action that was rapidly moving toward trial. Rather than bring these allegations in the State Action – as Plaintiffs indicated they would months before – Plaintiffs engaged in transparent forum shopping in an attempt to avoid California laws designed to preclude Plaintiffs' attempt to sue Peterson for the protected conduct of litigating his own case. This Court is not obligated to facilitate such litigation tactics, however, and may elect to stay this case in favor of the State Action.

"Under the *Colorado River* doctrine, a federal court may abstain from exercising its jurisdiction in favor of parallel state proceedings where doing so would serve the interests of 'wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation.'" *Krieger v. Atheros Communications, Inc*., 776 F. Supp. 2d 1053, 1057 (N.D. Cal. 2011) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976)). A motion to dismiss or stay under the *Colorado River* doctrine may properly be brought pursuant to Rule 12(b)(1). *Revolon Monterey Energy LLC v. Peak Operator LLC*, No. 13-7048 PSG (MRW), 2013 WL 12123689, at *1 (C.D. Cal. Dec. 27. 2013) ("Rule 12(b)(1) . . . allows a defendant to move for a stay or dismissal of an action pursuant to the . . . *Colorado River* abstention doctrine[].”); *see also Equity Lifestyle*

---

[3] Other than the QuickBooks data, "Count I" in the Federal FAC does not identify any other trade secret information allegedly misappropriated by Peterson. (Federal FAC ¶¶ 119-120, 123-146.)

*DEFENDANT JAMES J. PETERSON'S NOTICE OF MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES*

*Props., Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1188 (9th Cir. 2008).

Where two concurrent cases are deemed sufficiently "parallel," a district court may weigh seven different *Colorado River* factors to determine if dismissing or staying the federal action is appropriate. Each is addressed in turn.

## A. The State and Federal Actions are Substantially Similar

"As a threshold matter to the *Colorado River* test, the Court must determine whether the federal and state actions are sufficiently 'parallel' – *i.e.* whether substantially the same parties are contemporaneously litigating the same issues in different forums." *In re Countrywide Fin. Corp. Derivative Litig*., 542 F. Supp. 2d 1160, 1170 (C.D. Cal. 2008) (internal quotes and citations omitted). "Exact parallelism" is not required; rather, the two proceedings need only "substantially similar." *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir.1989); *see also XPO GF Am., Inc. v. Qiuheng Liao*, No. CV 19-4173 PA (MAAX), 2019 WL 8226077, at *4 (C.D. Cal. Sept. 27, 2019) ("Suits need not be identical to be parallel, and the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel"). Where the claims alleged in a federal action themselves arise out of proceedings in a parallel state court action, a stay is appropriate. *See, e.g.*, *XPO GF Am., Inc.*, 2019 WL 8226077, at *3 (staying a so-called "spin-off" federal claims that were based solely on discovery taken in the parallel state court proceeding.)

Here, this case and State Action are substantially similar. The Federal FAC's allegations concern the same set of occurrences and legal issues as those being litigated in the State Action. Specifically, the Federal FAC contains allegations regarding: (1) Peterson's investment in Truinject and majority noteholder status (Federal FAC ¶¶ 9-13, 17, 33, 57-59, 80-83, 95-98); (2) the solicitation of investors in Truinject (*Id.* ¶¶ 55-56, 60-62); (3) Peterson's requests for information as a noteholder and Rios's responses (or lack thereof) to those requests (*Id.* ¶¶ 89-94, 144); (4) statements and representations regarding offers to acquire Truinject, (*Id.* ¶¶ 22,

1229233.6/81603.05005

20

DEFENDANT JAMES J. PETERSON'S NOTICE OF MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES

111-113); and (5) Truinject's use of the proceeds from Peterson's Notes to reimburse Rios's expenses (*Id.* ¶¶ 109-110, 121).  The State FAC concerns these very same issues.  (*See, generally,* Federal FAC, Ex. 1 (State FAC), ¶¶ 61(e), 68(e).)  The issues and facts involved in the State and Federal Actions are intertwined.  Thus, the significant overlap in the parties, issues, and facts meets the "parallelism" requirement.

Moreover, Plaintiffs' causes of action against all Defendants solely arise out of the disclosure of alleged trade secret and confidential information ***in the State Action itself***.  As in *XPO GF Am., Inc.*, Plaintiffs' allegations are a spin-off of the State Action proceedings.  *See, e.g.*, *XPO GF Am., Inc.*, 2019 WL 8226077, at *3.  Thus, *Colorado River* abstention is proper.

## B.  The *Colorado River* Factors Weigh in Favor of a Stay

Once it is determined a state and federal proceeding are substantially similar, the Ninth Circuit considers the following eight factors in determining whether to stay a federal action:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*Tan v. GrubHub, Inc.,* 171 F. Supp. 3d 998, 1014 (N.D. Cal. 2016) (citing *R.R. Street & Co. Inc. v. Transport Ins. Co.,* 656 F.3d 966, 978-79.  Here, the *Colorado River* factors weigh in favor of staying the instant action.

The first factor does not apply to the instant action as this dispute does not involve a specific piece of property.  The second factor is neutral as both the federal and state forums are located in Santa Ana, California.

The third factor addressing the concern of piecemeal litigation weighs in favor of a stay. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.,* 843 F.2d 1253, 1258 (9th Cir.1988). The two cases here involve the same issues and parties. At the core of Peterson's fraud claims in the State Action are Rios's and Truinject's misrepresentations made to induce Plaintiff to purchase promissory notes. (State FAC ¶¶ 21-29.) Peterson alleges that Rios made these misrepresentations to Carpou and intended that he share the information with Peterson. (*Id.*)

Here, Carpou's sharing of this very same information underlies the causes of action that Plaintiffs allege against him. (Federal FAC ¶¶ 199-259, 289-300.) Moreover, the basis of the DTSA claim is the disclosure of alleged "trade secrets" in the State FAC. (Federal FAC, ¶¶ 109-110.) As a result of the overlapping issues and parties, discovery in the Federal action will be duplicative of the discovery well underway in the State Action. In fact, the parties admit in their joint Rule 26(f) report filed with this Court that discovery in this action "should be limited to the extent it is duplicative of discovery in the State Action." (Dkt. No. 42 (Joint Rule 26(f) Report) at 12:17-19.) On balance, if the Federal FAC is allowed to proceed, the parties and this Court will be forced to engage in unnecessary piecemeal litigation of these issues.

The fourth factor weighs heavily in favor of a stay given that the State Action was filed on April 19, 2019 (RJN, ¶ 1, Exh. A), ***almost two years before*** Plaintiffs filed their complaint in the instant action on January 12, 2021. (Dkt. No. 1.) Additionally, a review of the State Action's docket reveals that there has been significant progress in the State Action, including the Court's denial of Plaintiffs' Motion for Judgment on the Pleadings, and trial is presently set for May 2, 2022. (RJN, ¶ 5, Exh. E; Bareket Decl. ¶ 13.) In contrast, the Federal Action is in the early stages and has not progressed beyond general meet and confer efforts concerning Plaintiffs' Complaint and FAC. "[P]riority is not measured exclusively in terms of

22

THEODORA ORINGHER
COUNSELORS AT LAW

which complaint was filed first, but rather in terms of how much progress was actually made in the state and federal actions." *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.¸* 843 F.2d 1253, 1258 (9th Cir. 1988).  The State Action is far more developed at this juncture and, given that the state court first obtained jurisdiction over the claims at issue, this factor weighs strongly in favor of abstention.

The fifth factor concerning whether federal or state law provides the rule of decision is neutral in this instance.  Although Plaintiffs' Federal FAC includes two claims arising under federal law—the Defend Trade Secrets Act ("DTSA") and the Computer Fraud and Abuse Act ("CFAA")—this does not weigh against staying the Federal action.  Where "the state and federal courts have concurrent jurisdiction over a claim, this factor is less significant." *Nakash*, 882 F.2d at 1416 (noting that state courts have concurrent jurisdiction over RICO claims); *see also XPO GF America, Inc.,* 2019 WL 8226077, at *4 (C.D. Cal. Sept. 27, 2019) (noting that state courts have concurrent jurisdiction over DTSA and CFAA claims).  Here, the state and federal courts have concurrent jurisdiction of Plaintiffs' DTSA and CFAA claims; thus, the fifth factor is neutral.

The sixth factor addressing the adequacy of the state proceeding to adequately protect the rights of the federal litigants weights in favor of abstention.  Here, there is no question that the state court can adequately address Plaintiffs' rights and remedies at issue in the Federal Action.  After all, "State courts, like federal courts, have a constitutional obligation . . . to uphold federal law." *Stone v. Powell*, 428 U.S. 465, 533 n.35 (1976) (citing *Robb v. Connolly*, 111 U.S. 624, 637 (1884).  Accordingly, this factor weights in favor of a stay.

The seventh factor concerning forum shopping also weighs strongly in favor of staying this action under the *Colorado River* doctrine.  Forum shopping is the "practice of choosing the most favorable jurisdiction or court in which a claim might be heard." *R.R. Street & Co. Inc.,* 656 F.3d at 981 (citing Black's Law Dictionary 726 (9th ed. 2009)); *see e.g., Nakash,* 882 F.2d at 1417 (recognizing that plaintiff

THEODORA ORINGHER
COUNSELORS AT LAW

1   engaged in forum shopping where plaintiff waited three and a half years to assert
2   claims in a federal forum).

3       Here, even though Plaintiffs already filed a cross-complaint in the State Action
4   on October 1, 2019 (RJN, ¶ 2, Exh. B) and could have sought leave to amend to assert
5   the additional claims they assert in the Federal Complaint, Plaintiffs strategically
6   chose not to in the hopes the federal forum would be more favorable.  Indeed, in June
7   2020, Plaintiffs contemplated amending their State Cross-Complaint to add Kovacs,
8   Carpou, and Octane as parties, and assert many of the exact same causes of action
9   against them including breach of their respective confidentiality and nondisclosure
10  agreements with Truinject, fraud and breach of fiduciary duty against Kovacs, and
11  breach of confidential relationship against Carpou, among others.  (*See* Bareket Decl.
12  ¶¶ 8-9, Exh. 1.)  However, Plaintiffs ultimately decided to forego filing their amended
13  cross-complaint in the State Action, and instead waited to file suit in federal court on
14  January 12, 2021—nearly two years after commencement of the State Action.  The
15  seventh *Colorado River* factor thus weighs in favor of granting a stay to prevent
16  Plaintiffs' forum shopping.

17      The eighth factor of the *Colorado River* analysis also weighs in favor of a stay.
18  The state court action does not need to necessarily resolve all of the federal issues in
19  order for this factor to weigh in favor of abstention.  *See e.g., Cooper v. Jones,* No.
20  214CV0453KJMACP, 2017 WL 569628, at *5 (E.D. Cal. Feb. 13, 2017)
21  (determining that the eighth factor weighed in favor of a stay where "[a]lthough not
22  every element of plaintiff's federal claim will be litigated in the state proceedings,"
23  the state court judgment was likely to have a preclusive effect on the federal claims).
24  Here, the substantial overlap in issues in both actions creates the potential for
25  conflicting outcomes if Peterson's Motion to Stay is not granted.

26      On balance, the *Colorado River* factors as a whole weigh heavily in favor of a
27  stay.  The older State Action involving the same facts and issues has made significant
28  progress since April 2019.  (*See* RJN, ¶¶ 1 & 5, Exhs. A & E.)  Additionally, the state

THEODORA ORINGHER
COUNSELORS AT LAW

court may adequately address the issues set forth by the parties as it has concurrent jurisdiction of all claims. Plaintiffs' decision to file in federal court is an obvious attempt to assert additional related claims in what they hope is a more favorable forum. If the Federal Action is allowed to proceed, the parties and the courts will be forced to spend unnecessary time and additional resources to litigate the exact same issues in two arenas. Accordingly, this Court should stay the case at bar under the *Colorado River* doctrine to conserve judicial resources and ensure an equitable, efficient, and comprehensive disposition of litigation.

## IV.    THE FEDERAL FAC SHOULD BE DISMISSED AS TO PETERSON BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM AGAINST HIM

### A.    Legal Standard

An order dismissing claims under Rule 12(b)(6) is appropriate when plaintiffs' allegations are not supported by "a cognizable legal theory" or "sufficient facts alleged under a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Further, plaintiffs are obligated "to provide the 'grounds' of [their] 'entitlement to relief'" and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555-56. Merely asserting facts consistent with a defendant's liability or a "formulaic recitation of the elements of a cause of action" is patently insufficient. *Twombly*, 550 U.S. at 555; *see Ashcroft* , 556 U.S. at 678 ("the pleading standard . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'factual enhancement.'" *Ashcroft* , 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

And a court need not accept as true "allegations that are merely conclusory,

unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008); *see also Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) ("conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."); *accord Ashcroft*, 556 U.S. at 678. Only pleaded facts, not legal conclusions, are presumed to be true for purposes of evaluating a motion to dismiss under Rule 12(b)(6). *United States v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011).

## B.   Plaintiffs' Claims are Barred by the Litigation Privilege

Setting aside the vast majority of inflammatory and irrelevant allegations set forth in the Federal FAC, Plaintiffs' claims against Peterson arise solely out of Peterson's and his counsel's prosecution of the State Action and thus implicate privileged petitioning activity. (Federal FAC ¶¶ 22, 102-120, 139-14.) The California litigation privilege prohibits such a retaliatory action.

Section 47(b) of the California Civil Code ("Section 47(b)") codifies the litigation privilege. The litigation privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990). The purpose of the litigation privilege "is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *People ex rel. Gallegaos v. Pacific Lumber Co.*, 158 Cal. App. 4th 950, 958 (Cal. App. 2008) (citing *Action Apartment Assn., Inc. v. City of Santa Monica,* 41 Cal. 4th 1232, 1241 (Cal. 2007)). The litigation privilege is recognized as applying regardless of malice, being "absolute" in nature, and should be given "broad application". *Rusheen v. Cohen,* 37 Cal. 4th 1048, 1063 (citing *Silberg,* 50 Cal. 3d at 211-15 (*en banc*)).

In practice, the litigation privilege provides that a publication made in any "judicial proceeding" or any other "official proceeding authorized by law" is

1229233.6/81603.05005

26

*DEFENDANT JAMES J. PETERSON'S NOTICE OF MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES*

privileged.  *See Hansen v. Dept. of Corrections & Rehabilitation,* 171 Cal. App. 4th 1537, 1546 (2008); *Silberg*, 50 Cal. 3d at 212.  This includes allegations or statements made in pleadings, which may include confidential information or trade secrets.  *See McNair v. City and Cty. Of San Francisco*, 5 Cal. App. 5th 1154, 1169-71 (2016) (the litigation privilege applies to a doctor disclosing confidential information to the DMV); *see also Bergstein v. Stroock & Stroock & Lavan LLP*, 236 Cal. App. 4th 793, 803 (2015); *Finton Constr. Inc. v. Bidna & Keys, APLC*, 238 Cal. App. 4th 200 (2015).  And the litigation privilege protects communications and actions made in furtherance of the goals of litigation.  *See Quidel Corp. v. Siemens Med. Solutions USA, Inc.*, No. 16-cv-3059, 2020 WL 1820247 (S.D. Cal. Apr. 9, 2020) ("the privilege pertains not only to statements made during a trial, but also to steps taken before trial and statements made 'to achieve the objects of the litigation, even though the [statement] is made outside of the courtroom and no function of the court or its officers is invoked.").

For example, in *Bergstein,* the plaintiffs sued their former counsel in the underlying action for breach of fiduciary duty and professional negligence for representing parties that had interests directly adverse to the plaintiff's interests. *Bergstein*, 236 Cal. App. 4th at 798-99.  After obtaining a multimillion dollar verdict against their former counsel, the plaintiff filed suit against the defendants in *Bergstein* alleging causes of action for aiding and abetting her former counsel's breach oof fiduciary duty, interference with contractual relations and prospective economic advantage.  *Id.* at 799.  The *Bergstein* plaintiff's claims were based on defendants alleged hiring of the plaintiff's former counsel, and improperly using "confidential, privileged, and/or proprietary information . . . to carry out a litigation attack" on plaintiff.  *Id.*  In support of their successful anti-SLAPP motion, the defendants asserted that the plaintiffs could not prevail on their claims because they were barred, in part, by the litigation privilege.  *Id.* at 813.  The court of appeal upheld the anti-SLAPP ruling, holding that "plaintiffs' claims are based on allegations that defendants

1229233.6/81603.05005

27

*DEFENDANT JAMES J. PETERSON'S NOTICE OF MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES*

solicited and used confidential information for the purpose of filing various actions against plaintiffs. The complaint expressly alleges communicative activity throughout [. . .] [which] were made in or in anticipation of judicial proceedings, and were plainly made 'to achieve the objects of the litigation' and had 'some connection or logical relation to the action.'" *Id.* at 815 (citing *Silberg*, 50 Cal. 3d at 212).

Similarly, here, the Federal FAC alleges Peterson improperly obtained Plaintiffs' confidential and trade secret information, and then published said information in the State FAC. (*See* Federal FAC ¶¶ 109-110, 139-141.) The alleged wrongful conduct thus constitutes publications made in a judicial proceeding as well as communications made in furtherance of Peterson's interest in the State Action. Indeed, Plaintiffs attach the State FAC to their own Federal FAC as evidence of Peterson's alleged wrongdoing. Accordingly, the claims against Peterson are barred by California's statutory litigation privilege.

## C. Plaintiffs' Claims are Barred by the *Noerr-Pennington* Doctrine

In addition to California's litigation privilege, the conduct Plaintiffs allege in support of their claims against Peterson is protected by the First Amendment right to petition and those claims are barred under the *Noerr-Pennington* doctrine. *See Gamble v. Kaiser Foundation Health Plan, Inc.,* 348 F. Supp. 3d 1003, 1027 (N.D. Cal. 2018) (citing *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.,* 711 F.3d 1136, 1139-39 (9th Cir. 2013). "The essence of the *Noerr–Pennington* doctrine is that those who petition any department of the government for redress are immune from statutory liability for their petitioning conduct." *Theme Productions, Inc. v. News America Marketing FSI,* 546 F.3d 991, 1006-07 (9th Cir. 2008) (citing *Sosa v. DIRECTV, Inc.,* 437 F.3d 923, 929 (9th Cir. 2006)) ("[B]ecause *Noerr–Pennington* protects federal constitutional rights, it applies in all contexts [and] [t]here is no reason that *Noerr– Pennington* and California privilege law cannot both apply."). The *Noerr-Pennington* doctrine has "been applied to actions petitioning each of the three branches of government, and has been expanded beyond its original antitrust context." *Theme*

THEODORA ORINGHER
COUNSELORS AT LAW

*Productions, Inc.,* 546 F.3d 991 at 1007.

"Lawsuits are protected by the doctrine because they are essentially petitions to the courts for redress of grievances." *Theofel v. Farey-Jones,* 359 F.3d 1066, 1079 (9th Cir. 2004). A petition under the *Noerr-Pennington* doctrine includes a "complaint, an answer, a counterclaim and other assorted documents and pleadings, in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something." *Freeman v. Lasky, Haas & Cohler,* 410 F.3d 1180, 1184 (9th Cir. 2005). The doctrine also extends to "conduct incidental to a lawsuit" or "ancillary to litigation." *Redbox Automated Retail, LLC v. Buena Vista Home Entertainment, Inc.,* 399 F. Supp. 3d 1018, 1033 (C.D. Cal. 2019); *see e.g., Sosa,* 437 Fa.3d at 842 (holding that that pre-suit demand letters may qualify as "conduct incidental to a lawsuit"); *Freeman,* 410 F.3d at 1184 (holding that discovery misconduct may qualify as "conduct incidental to a lawsuit").

Here, the Federal FAC's claims against Peterson are based on his petitioning activity in the State Action and the related State FAC. (*See* FAC, ¶¶ 109-110, 139-141.) This alleged wrongful conduct is protected under the *Noerr-Pennington* doctrine. Accordingly, the Federal FAC's claims based on Peterson's petitioning activity in the State Action are barred by the *Noerr-Pennington* doctrine.

### D.   Plaintiffs' Claims are Barred as Compulsory Counterclaims

"Federal courts will not permit an action to be maintained where the claims asserted should have been brought as a compulsory counterclaim in an earlier action." *In re Crown Vantage, Inc.,* 421 F.3d 963, 973 n.7 (9th Cir. 2005 (citing *Cheiker v. Prudential Ins. Co.,* 820 F.2d 334 (9th Cir. 1987)); *see also Swain v. CACH, LLC,* 699 F. Supp. 2d 1117, 1123-24 (C.D. Cal. 2009) (holding that the plaintiff's claim should have been asserted in the underlying state action).

Here, Plaintiffs' claims against Peterson must have been brought in the State Action. Plaintiffs failed to do so, so these claims are now barred. The California Code of Civil Procedure provides that:

THEODORA 𝐓𝐃 ORINGHER
COUNSELORS AT LAW

> [I]f a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded.

Cal. Civ. Proc. Code § 426.30. This preclusion applies to "a cause of action which arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint." *Id.* at § 426.10(c). When determining relatedness, courts use an "expansive logical relation test" which does not require "an absolute identity of factual backgrounds for the two claims, but only a logical relationship among them." *Laguna Beach Sober Living, LLC v. City of Dana Point,* No. SACV 19-00024 AG (JDEx), 2020 WL 947946, at *2 (C.D. Cal. Jan. 6, 2020).

In *Swain,* the plaintiff asserted a declaratory relief claim seeking to determine plaintiff's liability on a deficiency related to a repossessed vehicle. *Swain*, 699 F. Supp. 2d at 1119-23. But, prior to the initiation of plaintiff's action in federal court, defendants had sued plaintiff in state court to collect money owed on a credit card. *Id.* at 1123. The *Swain* court determined that the plaintiff's request for a declaration arose "out of the same set of operative facts at issue in the [state] collection case, namely, the ownership and enforceability of the debt" and, accordingly, held the declaratory relief cause of action was barred as a compulsory counterclaim. *Id.* at 1123-24. This applies even where the claim is based on federal law. *See*, *e.g.*, *Currier v. Chow*, 270 Fed. App'x. 471, 473-74 (9th Cir. 2007) (holding that federal RICO violation claim was barred as a compulsory counterclaim in state court action); *Beats Elec., LLC v. Lamar,* No. CV 14-7537 FMO (MRWx), 2015 WL 9694787 (C.D. Cal. Aug. 31, 2015).

Here, the DTSA and CFAA claims asserted against Peterson arise from the same transactions and occurrences at issue in the State Action. Indeed, the entire basis

THEODORA ORINGHER
COUNSELORS AT LAW

for Plaintiffs' claims against Peterson appear based on Peterson obtaining allegedly "confidential" Truinject information and then publishing said information in the State FAC.  (Federal FAC ¶¶ 109-110.)  This same alleged wrongful conduct forms the basis of allegations that Defendants have raised in defense of the State Action. (Bareket Decl. ¶ 16, Exh. 3 at 49:1-51:19.)  And Plaintiffs even prepared a cross-complaint in the State Action to assert claims against Peterson for this alleged wrongful conduct, but then abandoned it.  (Bareket Decl. ¶¶ 8-12, Exhs. 1-2.)  By forgoing these claims in the State Action, Plaintiffs are barred from asserting them now.  Cal. Code Civ. Proc. § 426.30.  Accordingly, the Federal FAC's First and Second Cause of Actions against Peterson should be dismissed.

### E.     The DTSA Claim Fails

#### 1.     Plaintiffs Fail to Allege a Trade Secret

The DTSA allows plaintiffs to bring a private action if they own a trade secret that has been misappropriated.  18 U.S.C. § 1836(b)(1).  "A plaintiff seeking relief for misappropriation of trade secrets 'must identify the trade secrets and carry the burden of showing that they exist.'"  *Imax Corp. v. Cinema Technologies, Inc.,* 152 F.3d 1161, 1164 (9th Cir. 1998) (citing *Mai Sys. Corp. v. Peak computer, Inc.,* 991 F.2d 511, 522 (9th Cir. 1993)).  A trade secret is defined as financial or business information, among others, which:

> (A) the owner thereof has taken reasonable measures to keep such information secret; and
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information

18 U.S.C. § 1839(3).

In order to sufficiently plead a claim for trade secret misappropriation under the DTSA, a plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade

1  or of special persons who are skilled in the trade, and to permit the defendant to

2  ascertain at least the boundaries within which the secret lies." *Vendavo, Inc. v. Price*

3  *f(x) AG,* No. 17-cv-06930-RS, 2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) (citing

4  *Pellerin v. Honeywell Int'l, Inc.,* 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012)); *see also*

5  *Unified Grocers, Inc. v. VM International, Inc.,* No. EDCV 19-2365-MWF (SHKx),

6  2020 WL 5370621 (C.D. Cal. Apr. 8, 2020).

7      For example, in *Vendavo,* the plaintiff alleged that its misappropriated "trade

8  secrets" included:

> information not expressly covered by its patents. Such
> information includes its source code, customer lists and
> customer related information, pricing information, vendor
> lists and related information, marketing plans and strategic
> business development initiatives, 'negative knowhow'
> learned through the course of research and development,
> and other information related to the development of its
> price-optimization software, including ideas and plans for
> product enhancements.

16  *Vendavo, Inc.,* 2018 WL 1456697, at *3.  The *Vendavo* court held these

17  "generalized allegations" setting forth the plaintiff's purported trade secrets in

18  "broad, categorical terms" did not establish that the plaintiff had particular trade

19  secrets which were misappropriated. *Id.* at *3-4.  As such, the court dismissed the

20  plaintiff's trade secret claim under DTSA. *Id.* at *4.

21      Here, the Federal FAC's conclusory and generalized allegations are similarly

22  insufficient.  The Federal FAC alleges that Peterson's State FAC "referenced

23  protected trade secret information regarding finances, spending, funding and

24  corporate strategy." (Federal FAC ¶ 141.)  These allegations are even ***less specific***

25  ***and more conclusory*** then those in *Vendavo* and therefore, cannot sufficiently support

26  Plaintiffs' claim for trade secret misappropriation.

27      Alternatively, Plaintiffs may argue that the Federal FAC sufficiently alleges a

28  trade secret as shown by its reference to the State Action FAC: "Paragraphs 31-33 of

THEODORA ORINGHER
COUNSELORS AT LAW

the [State Action] FAC, disclosed Trade Secret Protected Truinject financial information contained in Truinject's financial QuickBooks."  (Federal FAC ¶ 110.)  However, an examination of these allegations does not reveal any trade secret information.  Rather, these allegations simply refer to categories of Rios's spending on meals, airfare, and hotels which Truinject reimbursed and the fact that Truinject made a loan to Rios.  (*See* State FAC ¶¶ 31-33.)

To qualify as a trade secret, the information must have "independent economic value" meaning that it "must be sufficiently valuable and secret to afford an actual or potential economic advantage over others."  *Cisco Systems, Inc. v. Chung*, 462 F. Supp. 3d 1024, 1052 (N.D. Cal. 2020) (citing *Calendar Research LLC v, StubHub, Inc.,* No. 2:17-cv-04062-SVW-SS, 2017 WL 10378336, *3 (C.D. Cal. Aug. 16, 2017)); *see also* 18 U.S.C. § 1839(3)(B).  A plaintiff asserting a trade secret misappropriation claim must do more than "merely recit[e] this element." *Id.*

Here, the Federal FAC only includes a conclusory allegation: "Truinject has information that was secret that derived actual or potential independent economic value because it was kept secret."  (Federal FAC ¶ 124.)  Plaintiffs do not allege how or why the fact that Rios's travel and meal expenditures were reimbursed by the Company or that Truinject issued Rios a loan have independent economic value from being kept secret.  Accordingly, the Federal FAC's First Cause of Action is insufficiently plead and should be dismissed.

### 2. Plaintiffs Fail to Allege that Peterson Acquired, Used or Disclosed the Purported Trade Secret Information

In addition to establishing ownership of a trade secret, Plaintiffs must also allege that the trade secret was misappropriated.  18 U.S.C. § 1836(b)(1).  In the context of the DTSA, "misappropriated" means either "(A) *acquisition* of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; *or* (B) *disclosure or use* of a trade secret of another without express or implied consent" which meets one of several conditions. 18 U.S.C.

THEODORA ORINGHER
COUNSELORS AT LAW

§ 1839(5)(A)-(B) (emphasis added).  Additionally, a defendant can only be held liable for "use" of a trade secret where the defendant "actually put the trade secret to some commercial use," i.e., that such defendant "received some sort of unfair trade advantage." *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1130 (9th Cir. 2010).

Even assuming that Rios's reimbursed expenses from 2016 and 2017 or the fact that Truinject loaned Rios funds somehow could constitute trade secrets, Plaintiffs fail to allege that Peterson acquired these purported trade secret information by any improper means.  And Plaintiffs fail to allege that Peterson made any commercial use of this "trade secret information" to receive an unfair trade advantage.  Instead, Plaintiffs allege that Peterson disclosed this information in the State FAC, which is a decidedly non-commercial (and privileged) use.  Accordingly, the DTSA claim should be dismissed for failure to state a claim upon which relief can be granted.

## F.    The CFAA Claim Fails

"The Computer Fraud and Abuse Act [ ] is a federal criminal statute that also authorizes civil actions for any person who suffers damage or loss by reason of a violation of the statute." *Parziale v. HP, Inc.,* 445 F. Supp. 3d 435, 448 (N.D. Cal. 2020) (citing 18 U.S.C. § 1030(g)).  "The CFAA prohibits a number of different computer crimes, the majority of which involve accessing computers without authorization or in excess of authorization, and then taking specified forbidden actions, ranging from obtaining information to damaging a computer or computer data." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009) (citing 18 U.S.C. § 1030(a)(1)-(7)).

Here, the Federal FAC is completely devoid of allegations showing any wrongful conduct against Peterson under its CFAA claim.  For example, the Federal FAC does not allege that Peterson in any way accessed a protected computer or threatened to damage one.  *See* 18 U.S.C. § 1030(a).  Plaintiffs have already essentially conceded that that their CFAA claim is insufficiently plead against Peterson when they offered to dismiss this claim against Peterson during meet and

34

1   confer efforts.  (*See* Bareket Decl. ¶ 20, Exh. 6.)  Thus, the Federal FAC fails to state

2   its CFAA claim against Peterson, and should be dismissed.

### G.   Allowing Plaintiffs Leave to Amend Would be Futile

"A district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2017) (internal citation omitted).  Nothing indicates Plaintiffs would be able to allege additional sufficient facts to demonstrate that Peterson misappropriated any trade secret information or engaged in computer fraud.  Giving Plaintiffs a ***third*** bite at the apple would only delay the final resolution of this matter.  Accordingly, Peterson respectfully requests the Court to grant its Motion to Dismiss the Federal FAC against Peterson with prejudice.

## V.   CONCLUSION

For the reasons set forth herein, Peterson respectfully urges the Court to (1) stay this action under the *Colorado River* doctrine in deference to the State Action or, in the alternative, (2) dismiss Plaintiffs' claims against Peterson, without leave to amend, for failing to state a claim.

DATED:  June 28, 2021          THEODORA ORINGHER PC


By:          /s/ Michael E. Bareket
_____
Jeffrey H. Reeves
Jessica H. Diotalevi
Michael E. Bareket
Attorneys for Defendant James J. Peterson